Bart B. CHAMBERLAIN, Jr., etc., Plaintiff-Appellee-Cross Appellant,

v.

Jerome KURTZ, Commissioner of Internal Revenue, et al., Defendants-Appellants-Cross Appellees.

No. 76–2336.

United States Court of Appeals, Fifth Circuit.

Feb. 14, 1979.

---

Charles S. White-Spunner, U. S. Atty., Mobile, Ala., Myron C. Baum, Acting Asst. Atty. Gen., Gilbert E. Andrews, Act. Chief, App. Sect., Robert E. Noel, John M. Cunningham, Donald J. Gavin, Robert A. Bernstein, James E. Crowe, Jr., Attys., Tax Div., Dept. of Justice, Washington, D. C., for defendants-appellants-cross appellees.

Lester M. Bridgeman, Louis T. Urbanczyk, Washington, D. C., Cooper C. Thurber, G. Sage Lyons, Mobile, Ala., for plaintiff-appellee-cross appellant.

Before JONES, AINSWORTH and HILL, Circuit Judges.

AINSWORTH, Circuit Judge:

This appeal presents novel and important questions under the Freedom of Information Act (FOIA)[1] in connection with a taxpayer's suit for the production and disclosure of certain Internal Revenue Service (IRS) information and documents. The IRS contends that under statutory provisions of the FOIA and under section 6103 of the Internal Revenue Code of 1954, as amended,[2] the documents at issue are exempt from disclosure. Bart W. Chamberlain brought this action under the FOIA to obtain from the IRS various documents com-

---

1. 5 U.S.C. § 552 (1976).

2. 26 U.S.C. § 6103 (1976).

piled in the course of criminal and civil fraud investigations of Chamberlain's federal income tax returns for 1965 and 1966. The IRS resisted disclosure of most of the documents sought by plaintiff. On cross-motions for summary judgment the district court, after a review of detailed affidavits describing the documents and *in camera* inspection of the documents themselves, entered a comprehensive order directing that some documents be disclosed in their entirety, some be disclosed in part and withheld in part and some be withheld entirely.[3] The case comes before us on cross-appeals, the Government challenging the district court's order insofar as it mandates the disclosure of six specific documents and Chamberlain challenging the order to the extent that it permits any documents to be withheld in whole or in part.[4] After careful review of the documents concerned, we conclude that the six documents whose disposition the Government appeals may properly be withheld under an exemption to the FOIA; with regard to the documents whose disposition Chamberlain appeals, we affirm.[5] The district court's order is, therefore, affirmed in part and reversed in part.

*The Facts:*

The present litigation began with events that took place principally in 1965 and 1966. Chamberlain was then the sole general partner of Citronelle-Mobile Gathering System Company, Ltd. (Citmoco), an Alabama partnership located in Mobile. During 1965 and 1966 Chamberlain authorized Citmoco to pay Public Relations Counsel, Inc., a public relations firm, approximately $17,000 for

services performed for a candidate for the United States Senate. These political contributions were entered on Citmoco's books in the account for "Legal and Accounting" expenses and were later improperly reported as business expenses on Citmoco's 1966 tax return.

There were several other disputes between Chamberlain and the IRS. A conflict regarding the tax years of 1956 through 1961 was finally ended by settlement in 1971. In 1965 the IRS Audit Division appointed Revenue Agent D. K. Taylor to undertake an investigation of Chamberlain's tax returns beginning with the 1962 tax year. This investigation eventually encompassed the years 1962 through 1968 and the dispute over income taxes due for those years remains unresolved. It was in the context of this broader inquiry that Agent Taylor investigated the treatment as business expenses of the political contributions made in 1965 and 1966.

The suspicion of possible fraud led Taylor to refer the matter to the IRS Intelligence Division in March 1970 for consideration of criminal prosecution. Special Agent A. A. Burch, to whom the case was assigned, concluded his investigation in July 1970 with a recommendation against prosecution and the Intelligence Division withdrew from the case. The civil fraud investigation, however, was unaffected by this withdrawal.

In September 1970, Agent Taylor discovered that due to administrative error, he and the Audit Division had inadvertently allowed the statute of limitations for Chamberlain's 1966 tax year to run on July 15,

---

3. The district court's opinion and order are reported as *Chamberlain v. Alexander,* S.D. Ala., 1976, 419 F.Supp. 235. On August 18, 1976 the district court entered supplemental findings of fact and a supplemental order which are reported at 76–2 U.S.T.C. ¶ 9638 (S.D.Ala., 1976).

4. Pursuant to a request by the court at oral argument the parties have submitted a joint written list of those documents whose disposition by the district court is challenged. Many of the documents and materials covered by the district court's order are not included in the joint list. We assume that this list represents the parties' final statement regarding the docu-

ments involved in this appeal. As to all the documents or materials covered by the district court's order and not mentioned in the joint list, we conclude that the parties are satisfied with the district court's decision and, accordingly, we do not consider such documents or materials in this appeal. As to them, we leave the district court's order undisturbed.

5. The nine exemptions to the FOIA's disclosure requirements are listed in 5 U.S.C. § 552(b); in this case the documents are covered by Exemptions 3, 5, 6 or 7, 5 U.S.C. §§ 552(b)(3), (5), (6) or (7).

1970. This caused considerable consternation within the agency since the claimed deficiencies in Chamberlain's 1966 taxes totalled approximately $127,000 and the IRS had already expended considerable time and effort in this regard. A finding of fraud with respect to any part of the 1966 tax return, however, would toll the statute of limitations and permit the assessment of the entire deficiency at any time.[6]

The case was officially referred to the Intelligence Division for the second time in late January 1971 and assigned to Special Agent George A. Bauwens. At the time of this second referral the IRS had undertaken a national investigation of improper deductions of political contributions and Agent Bauwens was associated with the Alabama branch of that investigation known as the "Alabama Project." Although Agent Bauwens' report, submitted August 24, 1971 after a thorough investigation, recommended that Chamberlain be prosecuted for criminal fraud,[7] the Regional Counsel's office ultimately decided against pursuing criminal action.

Meanwhile, the audit of Chamberlain's tax returns and the investigation of possible civil fraud involving the years 1965 and 1966 continued. In September 1972 the IRS notified Chamberlain of a total proposed tax liability of approximately $1.86 million, including $1.7 million in deficiencies for the years 1962 to 1968 and civil fraud penalties of about $158,000 for 1965 and 1966.[8] Chamberlain has challenged the proposed deficiencies and fraud penalties and the case is currently pending in the Appellate Division of the Southwest Region of the IRS.

In February 1973 Chamberlain filed an extensive written request with the IRS seeking the disclosure of approximately 400 documents that he claimed were essential to the adequate preparation of his defense to the deficiency and fraud claims. His request included various provisions of the Internal Revenue Manual outlining the IRS' internal operating procedures, as well as investigative files compiled in the course of the tax audit and fraud inquiry. Chamberlain initiated the instant litigation in July 1973 after the IRS declined to disclose most of the requested documents, claiming that they were protected by various exemptions of the FOIA and by the Internal Revenue Code.

There ensued almost three years of sparring during which the IRS released many of the documents sought while Chamberlain eliminated others from contention by narrowing the scope of his request. By March 1976 there remained in dispute only about 91 documents plus various provisions of the Internal Revenue Manual.[9] After a review of detailed affidavits submitted by the IRS describing the concerned documents and an *in camera* inspection of the documents themselves, the district court, pursuant to cross-motions for summary judgment, entered on March 31, 1976 the order which is now before us on appeal. The court's order directed the IRS to disclose all or part of approximately 53 documents and permitted the withholding of approximately 38 documents plus various provisions of the Internal Revenue Manual in their entirety.[10] With respect to each document, the order indicated not only the disposition of the document but also the statutory exemptions claimed by the IRS and, for those found exempt, the exemptions the court deemed applicable. Most of the documents ordered withheld by the court fell within Exemptions 5, 6 or 7 of the FOIA;[11] Exemption 3

---

6. *See* 26 U.S.C. § 6501(c)(1) (1976).

7. *See* 18 U.S.C. § 1001 (1976).

8. *See* 26 U.S.C. § 6653(b) (1976).

9. Because the IRS has maintained multiple files in this case containing duplicates of many documents and because certain reports and summaries incorporate many other documents, it is difficult to state precisely the number of separate documents involved in this litigation. Inevitably, there is some redundancy in a listing of the documents.

10. *See* 419 F.Supp. at 241–45.

11. The Freedom of Information Act, as amended, 5 U.S.C. § 552, provides in pertinent part:
    (b) This section does not apply to matters that are—. . . .

of the Act[12] was found applicable to those documents or parts of documents dealing with third party taxpayers.

Following the entry of the district court's order, Chamberlain moved the court to amend its judgment to award attorneys' fees under the provisions of 5 U.S.C. § 552(a)(4)(E)[13] and to make supplemental findings of fact to the effect that the second criminal fraud investigation by the Intelligence Division "was commenced and carried out with the intent of concealing, and avoiding the effects of, the fact that the revenue agent who routinely audited Plaintiff's tax returns for the years 1965 and 1966 had inadvertently allowed the civil statute of limitations to expire for the year 1966." With regard to this latter assertion, plaintiff contended that if the second fraud investigation were instituted solely to escape the consequences of Agent Taylor's negligence, the investigation would somehow be "phony" or a "sham" and that, therefore, the documents and information collected in this probe would not be protected under the exemptions to the FOIA. On August 18, 1976 the district court entered an order and amended findings of fact and conclusions of law[14] denying plaintiff's request for attorneys' fees and concluding that the investigation was not initiated or carried out with the intent of concealing or avoiding the consequences of the running of the statute of limitations for 1966.

After the district court entered its orders herein, Congress substantially amended both the FOIA and the Internal Revenue Code in ways that directly affect this litigation. The Government in the Sunshine Act, enacted September 13, 1976, significantly narrowed the scope of Exemption 3 of the FOIA,[15] while the Tax Reform Act of 1976,[16] enacted October 4, 1976, completely revised section 6103 of the Internal Revenue Code and created a comprehensive scheme for regulating the release of tax returns and information collected to deter-

---

(5) inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;

(6) personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;

(7) investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would (A) interfere with enforcement proceedings, . . . (C) constitute an unwarranted invasion of personal privacy, (D) disclose the identity of a confidential source and, in the case of a record compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, confidential information furnished only by the confidential source, . . .

12. At the time of the district court's decision Exemption 3, 5 U.S.C. § 552(b)(3) (1970), protected matters that were

specifically exempted from disclosure by statute; . . . .

The applicable statute in this case was 26 U.S.C. § 6103 (1970) which at that time read:

(a) Public record and inspection.—

(1) Returns made with respect to taxes imposed by chapters 1, 2, 3, and 6 upon which the tax has been determined by the Secretary or his delegate shall constitute public records; but, except as hereinafter provided in this section, they shall be open to inspection only upon order of the President and under rules and regulations prescribed by the Secretary or his delegate and approved by the President.

For regulations promulgated under this section see 26 C.F.R. § 301.6103(a)–1 (1978).

13. 5 U.S.C. § 552(a)(4)(E) provides:

The court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed.

14. *Chamberlain v. Alexander,* 76–2 U.S.T.C. ¶ 9638 (S.D.Ala.1976).

15. Pub.L.No. 94–409, § 5(b), 90 Stat. 1241, 1247 (September 13, 1976).

The exemption as amended is codified in 5 U.S.C. § 552(b)(3) (1976) and applies to matters:

(3) specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld; . . . .

16. Pub.L.No. 94–455, Title XII, § 1202(a)(1), 90 Stat. 1520, 1667 (October 4, 1976), codified in 26 U.S.C. § 6103 (1976).

mine tax liability. New section 6103 in general specifies that tax returns and information collected with regard to establishing the existence or amount of a tax liability shall be confidential. The section then outlines the circumstances in which information may be released to various types of interested parties, including the taxpayer himself. The statute vests in the Secretary of the Treasury the discretion to withhold certain information from the taxpayer whose taxes are at issue where the Secretary determines that the disclosure of such information "would seriously impair Federal tax administration." [17]

The Government contends that 58 of the 63 documents still at issue in this case are protected by section 6103, as amended, in conjunction with Exemption 3 of the FOIA, as amended. It has submitted an affidavit dated April 20, 1977 by the Acting Commissioner of the IRS stating that these 58 documents constitute material covered by the provisions of section 6103 and that their disclosure "would seriously impair Federal tax administration." The Government asserts that the five documents not covered by section 6103 are protected by other exemptions of the FOIA.[18] Chamberlain continues to argue that all of the disputed documents should be disclosed in their entirety.

*Discussion:*

■ There are five main issues raised on appeal. First, Chamberlain renews his contention that none of the documents and information compiled during the second criminal fraud investigation is exempt because that investigation was somehow a "sham" or illicit. Second, Chamberlain contends that the district court improperly re-

viewed the documents and inadequately articulated its rationale for the disposition of each document, and that this constitutes reversible error. Third, we must decide whether section 6103, as amended, satisfies the requirements of Exemption 3 of the FOIA, as amended, and, if so, the extent to which it applies to the documents in this case. Fourth, with regard to those documents not covered by section 6103, we must decide whether the district court erred in concluding that they should be withheld in whole or in part under other exemptions to the FOIA. Finally, Chamberlain contends that he is entitled to an award of attorneys' fees.

Chamberlain argues that the IRS undertook the second criminal fraud investigation in order to avoid the consequences of having allowed the statute of limitations on the 1966 tax year to run, and that this investigation was, therefore, improper or illicit. He then asserts that illegal activity by the IRS cannot support a claim of privilege under Exemption 5 of the FOIA nor can it constitute "law enforcement" for purposes of Exemption 7 thereof.[19]

The district court, however, found as a matter of fact that the second referral to the Intelligence Division was not made to avoid the effects of the expiration of the statute of limitations. There is ample support in the record for the district court's finding that the first criminal investigation was not a full-scale inquiry and that the second referral was made in the context of the "Alabama Project" to effect a more comprehensive investigation. Our rejection of plaintiff's argument does not, however, depend upon the conclusion that the second investigation was prompted by factors other than the desire to avoid the running of

**17.** 26 U.S.C. §§ 6103(c) and (e)(6).

**18.** The five documents which the Government does not claim are exempt under sections 6103 and 552(b)(3) are 42, 46, 55L, 55M, and 55–O. The district court found that documents 42 and 46 were exempt in their entirety under Exemption 5 and that documents 55L, 55M and 55–O were exempt in part under Exemption 6.

**19.** Chamberlain relies on cases like *Gravel v. United States*, 408 U.S. 606, 92 S.Ct. 2614, 33

L.Ed.2d 583 (1972); *In re Subpoena to Nixon*, D.D.C., 1973, 360 F.Supp. 1, *aff'd sub nom., Nixon v. Sirica*, 1973, 159 U.S.App.D.C. 58, 487 F.2d 700; and *Weissman v. Central Intelligence Agency*, 1977, 184 U.S.App.D.C. 117, 565 F.2d 692, which held that illegal activity cannot enjoy the executive privilege and that an improper and unauthorized investigation cannot constitute a "law enforcement purpose."

the statute of limitations. If the IRS sought to establish the existence of fraud so as to reopen the entire 1966 tax year, this would not transform an otherwise legal and proper investigation into an illegal inquiry. It is the duty of the IRS to collect taxes and to investigate possible defalcations of taxpayers in the reporting and payment of taxes. Moreover, Chamberlain places an unwarranted emphasis on the Intelligence Division's initial withdrawal from the case, which was merely one step in an internal process of deciding how to deal with a particular case. The Audit Division's inquiry into potential civil fraud continued nevertheless.

■ Chamberlain's second contention is also without merit. He asserts in effect that the district court adopted inadequate procedures for reviewing the documents and failed to explain satisfactorily the rationale underlying the application of the statutory exemptions to the documents that were withheld. There was no abuse of discretion in the district court's management of this case. On the contrary, the court's review of the documents was more than adequate; it decided the case on the basis of detailed descriptions of the documents, an elaborate index of the exemptions claimed with respect to each document, and the court's own *in camera* inspection of the documents. As required by statute the court considered the potential for segregability[20] of portions of the documents and ordered many documents disclosed in part. The court's order discusses each of the relevant exemptions in general and lists each document individually with the exemptions claimed, indicating either the parts of the document to be disclosed or the exemptions under which the document could be withheld in its entirety.[21] Given the mass of

material to be disposed of this procedure was entirely reasonable.

The third issue involves novel aspects of this case. The Government contends that amended section 6103 of the Internal Revenue Code satisfies the requirements of Exemption 3 of the FOIA and that it exempts from disclosure all but five of the documents at issue in this appeal. In deciding this question we must determine which provisions of section 6103 govern this case, whether those provisions are the sort contemplated by Exemption 3, and whether the documents here fall within the ambit of section 6103.

■ Preliminarily, we note the well-established rule that "a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." *Bradley v. Richmond School Board*, 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974); *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 165, 95 S.Ct. 1504, 1523, 44 L.Ed.2d 29 (1975); *Fusari v. Steinberg*, 419 U.S. 379, 387, 95 S.Ct. 533, 538, 42 L.Ed.2d 521 (1975). No injustice will be done the parties by this court applying the law as it presently exists, rather than as it was when the district court rendered its decision.

■ New section 6103 of the Internal Revenue Code was enacted primarily to regulate and restrict access to tax returns and return information[22] by the many government bodies and agencies that routinely had access to such information under former section 6103.[23] Subsection 6103(a) states the general rule that "returns and return information shall be confidential" and shall not be disclosed except as autho-

---

**20.** 5 U.S.C. § 552(b) provides in pertinent part: Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection.

**21.** See the district court's order at 419 F.Supp. 241–45.

**22.** *See* note 25, *infra*.

**23.** *See generally* S.Rep.No.94–938, 94th Cong., 2d Sess., pt. I, pp. 315–318, *reprinted in* [1976] U.S.Code Cong. & Admin.News, pp. 3439, 3744–47.

rized by the section;[24] "return" and "return information" are defined in subsection 6103(b).[25]

There is dispute as to which of the substantive disclosure provisions of section

24. 26 U.S.C. § 7213 (1976) provides criminal penalties for the unauthorized or improper release of confidential tax information.

25. 26 U.S.C. § 6103 provides in pertinent part:
*Confidentiality and disclosure of returns and return information.*

(a) *General rule.*—Returns and return information shall be confidential, and except as authorized by this title—

(1) no officer or employee of the United States,

(2) no officer or employee of any State or of any local child support enforcement agency who has or had access to returns or return information under this section, and

(3) no other person (or officer or employee thereof) who has or had access to returns or return information under subsection (e)(1)(D)(iii) or subsection (n),

shall disclose any return or return information obtained by him in any manner in connection with his service as such an officer or an employee or otherwise or under the provisions of this section. For purposes of this subsection, the term "officer or employee" includes a former officer or employee.

(b) *Definitions.*—For purposes of this section—

(1) *Return.*—The term "return" means any tax or information return, declaration of estimated tax, or claim for refund required by, or provided for or permitted under, the provisions of this title which is filed with the Secretary by, on behalf of, or with respect to any person, and any amendment or supplement thereto, including supporting schedules, attachments, or lists which are supplemental to, or part of, the return so filed.

(2) *Return Information.*—The term "return information" means—

(A) a taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments, whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, *or any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of*

6103 is properly applicable to the instant litigation. The Government contends that subsections 6103(c) and 6103(e)(6) control this case, while Chamberlain argues that subsection 6103(h)(4) is the proper provision.[26] Although each of these subsections

*any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense,* and
(B) any part of any written determination or any background file document relating to such written determination (as such terms are defined in section 6110(b)) which is not open to public inspection under section 6110,
but such term does not include data in a form which cannot be associated with, or otherwise identify, directly or indirectly, a particular taxpayer. (emphasis added)

26. 26 U.S.C. § 6103 further provides in pertinent part:

(c) *Disclosure of returns and return information to designee of taxpayer.*—
The Secretary may, subject to such requirements and conditions as he may prescribe by regulations, disclose the return of any taxpayer, or return information with respect to such taxpayer, to such person or persons as the taxpayer may designate in a written request for or consent to such disclosure, or to any other person at the taxpayer's request to the extent necessary to comply with a request for information or assistance made by the taxpayer to such other person. *However, return information shall not be disclosed to such person or persons if the Secretary determines that such disclosure would seriously impair Federal tax administration.*

(e) *Disclosure to persons having material interest.*—
(1) *In general.*—The return of a person shall, upon written request, be open to inspection by or disclosure to—
(A) in the case of the return of an individual—
(i) that individual

(6) *Return Information. Return information with respect to any taxpayer may be open to inspection by or disclosure to any person authorized by this subsection to inspect any return of such taxpayer if the Secretary determines that such disclosure would not seriously impair Federal tax administration.*

(h) *Disclosure to certain Federal officers and employees for purposes of tax administration, etc.*—

accords the Secretary discretion to withhold information, the criteria to be applied are different. Subsections (c) and (e)(6) direct the Secretary not to disclose return information to the taxpayer or his designee if he determines that such disclosure "would seriously impair Federal tax administration";[27] subsection (h)(4) provides more narrowly for nondisclosure only if the Secretary determines that disclosure would "identify a confidential informant or seriously impair a civil or criminal tax investigation."

■ The language and legislative history of section 6103 clearly indicate that subsections (c) and (e)(6) apply in cases in which a taxpayer seeks the disclosure of information relating to his own tax return. These subsections deal respectively with disclosure to the taxpayer's designee and disclosure to persons with a material interest. They give the taxpayer unrestricted access to his own returns, but as to other information or materials collected by the IRS in the course of determining tax liability, availability is conditioned on the Secretary's determination that such access would not impair tax administration.

Subsection 6103(h), on the other hand, does not pertain to the release of information to the taxpayer himself. Rather it regulates "[d]isclosure to certain Federal officers and employees for purposes of tax administration," and represents but one of a series of provisions governing the release of information to third parties.[28] Subsection (h) permits the Secretary to release information regarding a taxpayer to officials of the Department of the Treasury or the Department of Justice where the taxpayer himself is a party to the proceeding or in specified circumstances where a tax proceeding involving another party raises issues related to the taxpayer's own tax information. Subsection (h) makes no distinction between returns and return information, applying the same criteria for disclosure to both.

■ Chamberlain argues, however, that subsection (h)(4) which authorizes disclosure "in judicial and administrative tax proceedings" applies to this case since the instant litigation is "a Federal or State judicial or administrative proceeding pertaining to tax administration." He contends that this provision mandates disclosure to him unless the Secretary determines that "such disclosure would identify a confidential informant or

(4) *Disclosure in judicial and administrative tax proceedings.*—A return or return information may be disclosed in a Federal or State judicial or administrative proceeding pertaining to tax administration, but only—
(A) if the taxpayer is a party to such proceeding;
(B) if the treatment of an item reflected on such return is directly related to the resolution of an issue in the proceeding;
(C) if such return or return information directly relates to a transactional relationship between a person who is a party to the proceeding and the taxpayer which directly affects the resolution of an issue in the proceeding; or
(D) to the extent required by order of a court pursuant to section 3500 of title 18, United States Code, or rule 16 of the Federal Rules of Criminal Procedure, such court being authorized in the issuance of such order to give due consideration to congressional policy favoring the confidentiality of returns and return information as set forth in this title.
*However, such return or return information shall not be disclosed as provided in*

*subparagraph (A), (B), or (C) if the Secretary determines that such disclosure would identify a confidential informant or seriously impair a civil or criminal tax investigation.* (emphasis added)

27. Although the grant of discretion to the Secretary is phrased in the negative in subsection (c) and the positive in subsection (e)(6), the criterion is the same in each. In this respect then the two provisions are functionally identical.

28. *See, e. g.,* 26 U.S.C. § 6103 in pertinent part:
(g) Disclosure to President and certain other persons.—

(i) Disclosure to Federal officers or employees for administration of Federal laws not relating to tax administration.—

(j) Statistical use.—

(k) Disclosure of certain returns and return information for tax administration purposes.—

seriously impair a civil or criminal tax investigation." We reject this interpretation. The provision must be read in context; subsection (h) deals with disclosure to federal officials for purposes of tax administration.[29] Subsection (h)(4) merely describes the circumstances in which these officials may disclose confidential information in a judicial or administrative proceeding. Without subsection (h)(4) officials could not use the information as evidence in such proceedings. There is nothing to indicate that the provision was designed to accord a taxpayer automatic access to all information pertaining to his tax liability immediately upon the initiation of such a proceeding.

It is not reasonable to believe that Congress enacted subsections 6103(c) and (e)(6) which specifically address a taxpayer's right to his own tax files, intending that these provisions cease to operate as soon as the taxpayer's tax information becomes either directly or indirectly involved in a judicial or administrative tax proceeding. Such an interpretation would effectively nullify subsections (c) and (e)(6) since they could be circumvented merely by initiating a judicial or administrative proceeding.[30]

Nothing in the legislative history of section 6103 suggests that subsection (h)(4)

was intended to govern disclosures of information to the taxpayer himself. On the contrary, the committee reports dealing with subsection (h)(4) discuss only disclosure to third party law enforcement officials,[31] while the sections of the committee reports dealing with disclosures to taxpayers with a material interest state that "return information (in contrast to 'returns') could be disclosed to persons with a material interest only to the extent the IRS determines this would not adversely affect the administration of the tax laws." [32]

■■ We, therefore, conclude that subsections 6103(c) and 6103(e)(6) are applicable in this case, and that the proper criterion for the Secretary's exercise of discretion in withholding documents from disclosure is whether "such disclosure would seriously impair Federal tax administration." The next question is whether these subsections are sufficiently specific to satisfy the requirements of Exemption 3 of the FOIA. This provision exempts from disclosure matters which are "specifically exempted from disclosure by statute . . . provided that such statute . . . (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld." [33] Both the language and

**29.** See the analogous provision governing the disclosure of information to state officials. 26 U.S.C. § 6103(d).

**30.** As it is not necessary to a decision in this case, we express no opinion regarding whether an FOIA suit constitutes a "judicial . . . proceeding . . . pertaining to tax administration" within the meaning of section 6103. 26 U.S.C. § 6103(b)(4) defines "tax administration." Since we conclude that subsection (h)(4) applies to third party federal officials, and not to the taxpayer himself, we need not decide whether the instant case involves "tax administration."

**31.** S.Rep.No.94–938, 94th Cong., 2d Sess., pt. I, pp. 323–326 (1976), *reprinted in* [1976] U.S.Code Cong. & Admin.News, pp. 3439, 3753–56; H.Conf.Rep.No.94–1515, 94th Cong., 2d Sess., pp. 477–78 (1976), *reprinted in* [1976] U.S.Code Cong. & Admin.News, pp. 4118, 4181–82.

**32.** S.Rep.No.94–938, 94th Cong., 2d Sess., pt. I, p. 339 (1976), *reprinted in* [1976] U.S.Code Cong. & Admin.News, pp. 3439, 3768–69;

H.Conf.Rep.No.94–1515, 94th Cong., 2d Sess., p. 480 (1976), *reprinted in* [1976] U.S.Code Cong. and Admin.News, pp. 4118, 4184.

**33.** For the full text of Exemption 3, as amended, 5 U.S.C. § 552(b)(3), see note 15, *supra.* Part A of Exemption 3 refers to statutes requiring that "matters be withheld from the public in such a manner as to leave no discretion on the issue", and has no applicability in the instant case since subsections 6103(c) and 6103(e)(6) vest the Secretary with discretion regarding the release of return information to a taxpayer with a material interest in the information. A number of recent decisions holding that section 6103 satisfies the requirements of Exemption 3 are inapposite to the instant litigation because they involved part A of Exemption 3, not part B. In these cases, the plaintiffs sought the disclosure of a third party's tax information; as section 6103 absolutely prohibits the release of tax information concerning one taxpayer to another taxpayer who has no material interest in the information, these cases were decided under part A of Exemption 3.

legislative history of Exemption 3, as amended, indicate that subsections 6103(c) and 6103(e)(6) qualify for the statutory exemption to the FOIA.

Part B of Exemption 3 requires only that a statute either establish particular criteria or refer to particular types of matters. Subsections 6103(c) and 6103(e)(6) satisfy both of these tests. The criterion for the withholding of information is whether disclosure would "seriously impair Federal tax administration," and these subsections apply only to a particular type of matter, return information, which is carefully defined by the statute. Subsections 6103(c) and 6103(e)(6) are, therefore, drawn narrowly enough to avoid the evils of unfettered agency discretion with which Congress was trying to deal when it amended Exemption 3. Congress amended this ex-

emption specifically to overrule the result in *FAA v. Robertson*, 422 U.S. 255, 95 S.Ct. 2140, 45 L.Ed.2d 164 (1975), which held that section 1104 of the Federal Aviation Act of 1958, 49 U.S.C. § 1504,[34] satisfied the requirements of former Exemption 3.[35] Congress felt that this interpretation of Exemption 3 gave agencies too much discretion to withhold information.[36] Congress did not, however, enact a provision that excluded from the operation of Exemption 3 all statutes that left an agency with discretion over the disclosure of information; it merely required that this discretion be limited to certain defined matters or that it be informed by established criteria.[37] In this respect section 6103 is easily distinguished from section 1104 of the Federal Aviation Act.[38]

*See, e. g., Fruehauf Corp. v. I. R. S. (Fruehauf II )*, 6 Cir., 1977, 566 F.2d 574; *Lobosco v. I. R. S.*, 78–2 U.S.T.C. ¶ 9578, 42 A.F.T.R.2d 78–5630 (E.D.N.Y.1978); *Belisle v. I. R. S.*, 462 F.Supp. 460, 78–1 U.S.T.C. ¶ 9459, 42 A.F.T.R.2d 78–5059 (W.D.Okl.1978); *Grenier v. I. R. S.*, D.Md., 1978, 449 F.Supp. 834. As subsections 6103(c) and 6103(e)(6) afford the Secretary some discretion in the release of return information, we must decide whether these subsections conform to the requirements of part B of Exemption 3.

Numerous cases found former section 6103 applicable to former section 552(b)(3), but these cases are, of course, not relevant in light of the changes in both sections. *See, e. g., Mason v. Callaway*, 4 Cir., 1977, 554 F.2d 129, *cert. denied*, 434 U.S. 877, 98 S.Ct. 229, 54 L.Ed.2d 157 (1977); *Fruehauf v. I. R. S. (Fruehauf I )*, 6 Cir., 1975, 522 F.2d 284, *vacated and remanded*, 429 U.S. 1085, 97 S.Ct. 1090, 51 L.Ed.2d 530 (1977); *Tax Analysts and Advocates v. I. R. S.*, 1974, 164 U.S.App.D.C. 243, 505 F.2d 350.

**34.** 49 U.S.C. § 1504 provides in pertinent part:
Any person may make written objection to the public disclosure of information contained in any application, report, or document filed pursuant to the provisions of this chapter or of information obtained by the Board or the Administrator, pursuant to the provisions of this chapter, stating the grounds for such objection. Whenever such objection is made, the Board or Administrator shall order such information withheld from public disclosure when, in their judgment, a disclosure of such information would adversely affect the interests of such person and is not required in the interest of the public.

**35.** See note 12, *supra*.

**36.** *See* H.Rep.No.94–880, 94th Cong., 2d Sess., pt. I, pp. 22–23 (1976), *reprinted in* [1976] U.S. Code Cong. & Admin.News, pp. 2183, 2203–05; H.Conf.Rep.No.94–1441, 94th Cong., 2d Sess., p. 25 (1976), *reprinted in* [1976] U.S.Code Cong. & Admin.News, pp. 2244, 2260–61.

**37.** *See generally* Note, The Effect of the 1976 Amendment to Exemption Three of the Freedom of Information Act, 1976 Colum.L.Rev. 1029 (1976).

**38.** The legislative history provides examples of statutes that Congress thought would satisfy Exemption 3 as amended. H.Rep.No.94–880, 94th Cong., 2d Sess., pt. I, p. 23. Section 6103 is not among the examples but one of the cited statutes, the Atomic Energy Act of 1954, 42 U.S.C. §§ 2161–66 (1976), is closely analogous to section 6103. It authorizes the Atomic Energy Commission to release "Restricted Data" where it determines that the publication of such data is "without undue risk to the common defense and security." 42 U.S.C. § 2162(a). *See also* 42 U.S.C. §§ 2162(c), 2163, 2164(b) & 2165. These provisions are no more specific or narrow than subsections 6103(c) or 6103(e)(6).

For cases applying statutes analogous to section 6103 to part B of Exemption 3, as amended, *see generally Lee Pharmaceuticals v. Kreps*, 9 Cir., 1978, 577 F.2d 610; *National Commission on Law Enforcement and Social Justice v. CIA*, 9 Cir., 1978, 576 F.2d 1373; *Baker v. CIA*, 1978, 188 U.S.App.D.C. 401, 580 F.2d 664.

■ It is a well-settled and sensible principle of statutory interpretation that statutes should be reconciled where possible. *Morton v. Mancari,* 417 U.S. 535, 550–51, 94 S.Ct. 2474, 2482–83, 41 L.Ed.2d 290 (1972). Congress enacted the Government in the Sunshine Act and the Tax Reform Act of 1976 within a month of each other in September and October 1976. It is difficult to believe that Congress enacted a comprehensive scheme for releasing information to taxpayers with the intention that it have no further applicability once the taxpayer files an FOIA suit.[39] Accordingly, we conclude that the provisions of section 6103 dealing with the disclosure of return information to a taxpayer with a material interest therein satisfy the requirements of Exemption 3.

■ Having decided that Exemption 3 and section 6103 permit the IRS to withhold return information from the taxpayer where the release of the information would seriously impair federal tax administration, we now determine whether the exemption is applicable to the contested documents in this case. We conclude that it is unnecessary to remand this case for further proceedings in the district court and, in the interest of judicial economy and efficiency, we have decided to end this litigation here.[40]

The Government contends that, of the approximately 63 documents still at issue, 58 constitute return information [41] whose

disclosure would seriously impair tax administration. In the joint written list of documents submitted by the parties on October 26, 1978, Chamberlain stipulated that 42 of these 58 documents do in fact represent return information. The 42 documents as to which the parties are in agreement comprise various intra-agency memoranda analyzing and discussing Chamberlain's tax liability, several summaries of the case, memoranda of interviews with witnesses, assorted agency workpapers dealing with the computation of Chamberlain's taxes, reports by different agents who have worked on the case, and letters or memoranda from one IRS official to another dealing with different aspects of the case. These documents are clearly matters prepared or collected by the Secretary with respect to determining the existence of liability for a tax or penalty.

■ With regard to the 16 documents that Chamberlain claims are not return information,[42] we disagree and conclude that each of them constitutes return information under section 6103, at least with respect to those parts ordered withheld by the district court.[43] These documents include intra-agency communications regarding Chamberlain's tax liability, memoranda of conferences on that subject, various "sensitive case" reports on this case, the testimony of an important witness before a grand jury, and several reports discussing

---

39. Congress' awareness of the FOIA while working on the Tax Reform Act is demonstrated by the frequent mention of the FOIA in that part of the Senate Committee report dealing with new section 6110 of the Internal Revenue Code, 26 U.S.C. § 6110, which establishes a mechanism for the "[p]ublic inspection of written determinations." *See* S.Rep.No.94–938, Part I, 94th Cong., 2d Sess., 303–315. In the report the discussion of this section immediately precedes the discussion of section 6103.

40. *See, e. g., Fruehauf Corp. v. I. R. S.,* 6 Cir., 1977, 566 F.2d 574.

41. *See* definition of "return information" at 26 U.S.C. § 6103(b)(2), note 25, *supra.*

42. These include Documents 16A(31), 16A(32), 16A(45)h, 16C(1)c, 16C(1)d, 16C(16)e, 47, 48, 50a, 50c, 52, 55H, 55J, 55N, 55Q, and 55P.

43. It will be remembered that the district court ordered many documents disclosed in whole or in part. The Government has appealed the order to disclose only as to six documents, and has acquiesced in the balance of the disclosures. Chamberlain has appealed the district court's order insofar as it permitted documents to be withheld in whole or in part. On this appeal, therefore, aside from the six documents in the Government's appeal, we consider only those parts of the documents ordered withheld by the district court. The narrow question here then is whether those parts of the documents withheld by the district court constitute return information and are, hence, protected by section 6103 or whether the propriety of the withholding must be analyzed under another exemption to the FOIA.

the tax liability of other taxpayers. The material prepared or collected by the IRS with regard to Chamberlain's potential liability for deficiencies or penalties clearly represents return information. The documents which discuss the tax liability of third party taxpayers constitute return information of those taxpayers. This information is confidential and the Secretary has no authority to disclose it to Chamberlain.

We next consider whether the Secretary has adequately demonstrated that the release of this return information to Chamberlain would "seriously impair Federal tax administration." The FOIA, of course, places the burden of sustaining a decision to withhold information on the agency.[44] In this case, we find that the IRS has sustained its burden by demonstrating that the release of the documents would result in serious impairment of the effort to collect back taxes and penalties from Chamberlain. Virtually all of the documents sought discuss either the facts or law relating to the fraud claim against Chamberlain or the computation of tax deficiencies for the years 1962 to 1968. Release of this information would doubtless be of benefit to him in the preparation of his defense to the various claims against him. Subsections 6103(c) and (e)(6) were designed precisely to avoid the damage to tax collection that would result from the untimely disclosure of the IRS' files, while allowing the taxpayer to gain access to return information after the Secretary has determined that release of this information would not interfere with tax administration. Accordingly, we find that the Government has

established that the disclosure of these documents would seriously impair tax administration. They are, therefore, exempted from disclosure by section 6103 of the Code in conjunction with Exemption 3 of the FOIA.

The fourth major part of this appeal concerns the five documents which are not return information.[45] Two of these documents are intra-agency memoranda which discuss cases of improper treatment of political contributions.[46] The district court held that these memoranda could be withheld under Exemption 5 of the FOIA,[47] which creates a privilege for materials constituting part of the deliberative process within an agency. This privilege is necessary to protect the integrity of an agency's decisions by insuring the unhindered exchange of fact and opinion within the agency.[48] These documents represent part of the IRS' internal deliberations with regard to the handling of cases involving political contributions and, therefore, the district court's decision to order them withheld was correct.

The final three documents[49] are memoranda on disciplinary proceedings involving various persons within the IRS. The district court ordered these documents disclosed in part with the names and other identifying information excised. This information was withheld under Exemption 6 of the FOIA which protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."[50] Under Exemption 6 we must balance the

---

44. 5 U.S.C. § 552(a)(4)(B).

45. Documents 42, 46, 55L, 55M, 55–O.

46. Documents 42 and 46.

47. 5 U.S.C. § 552(b)(5) provides that the FOIA does not apply to matters that are:
    inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency.

48. *See, e. g., NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975); *EPA v. Mink,* 410 U.S. 73, 93 S.Ct. 827,

35 L.Ed.2d 119 (1973); *Pacific Molasses Co. v. NLRB*, 5 Cir., 1978, 577 F.2d 1172; *Robbins Tire & Rubber Co. v. NLRB*, 5 Cir., 1977, 563 F.2d 724, reversed on other grounds, *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 98 S.Ct. 2311, 57 L.Ed.2d 159 (1978); *Cooper v. Department of the Navy,* 5 Cir., 1977, 558 F.2d 274; *Kent Corp. v. NLRB,* 5 Cir., 1976, 530 F.2d 612, *cert. denied,* 429 U.S. 920, 97 S.Ct. 316, 50 L.Ed.2d 287 (1976).

49. Documents 55L, 55M and 55–O.

50. 5 U.S.C. § 552(b)(6).

privacy interests or personal nature of the information sought against the public interest that would be served by disclosure. *See, e. g., Department of Air Force v. Rose,* 425 U.S. 352, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976); *Pacific Molasses Co. v. NLRB,* 5 Cir., 1978, 577 F.2d 1172; *Committee on Masonic Homes v. NLRB,* 3 Cir., 1977, 556 F.2d 214.

These disciplinary reports concern the responsibility of various individuals with regard to the running of the statute of limitations on Chamberlain's 1966 tax year. In *Rose,* the Supreme Court found that the summaries of disciplinary proceedings involving cadets at the Air Force Academy constituted "similar files" under Exemption 6 and approved a procedure whereby the files were to. be released if the deletion of identifying references was sufficient to protect the privacy interests of the cadets. 425 U.S. at 381, 96 S.Ct. at 1608. In the instant case, we find that the district judge reached a workable accommodation of the IRS employees' privacy interest in avoiding publication of embarrassing personal information and the public's interest in knowing about the conduct of IRS operations. Chamberlain's personal interest in knowing the identities of the persons discussed in the reports adds nothing to the equation. *E. g., Pacific Molasses, supra; Masonic Homes, supra.* We, therefore, affirm the district court's order with respect to these three documents.

■ Finally we consider the question of attorneys' fees. Chamberlain filed a claim for approximately $120,000 in such fees under 5 U.S.C. § 552(a)(4)(E),[51] asserting that he was the substantially prevailing party and, therefore, entitled to payment. The district court rejected this claim in its supplemental order of August 18, 1976. We

doubt that Chamberlain should be characterized as having "substantially prevailed" in this action, but we need not resolve the issue since our recent decision in *Blue v. Bureau of Prisons,* 5 Cir., 1978, 570 F.2d 529, disposes of Chamberlain's claim. In that case, we recognized that Blue, a prisoner seeking his prison records, had substantially prevailed,[52] but held that there is no presumption in favor of awarding attorneys' fees in an FOIA case and that such an award is left to the sound discretion of the district judge.

After carefully reviewing the legislative history of the 1974 amendments to the FOIA which added section 552(a)(4)(E), the court concluded that Congress intended the district court's discretion in awarding attorneys' fees to be guided by the four criteria enumerated in the Senate Conference Report.[53] These criteria are: first, the benefit to the public deriving from the case; second, the commercial benefit to the complainant; third, the nature of the interest in the records sought; and fourth, whether the Government's withholding of the documents had a reasonable basis in law.[54] Application of these criteria to the instant case shows that the district court acted properly in denying attorneys' fees.

First, there is virtually no benefit to the public accruing from this litigation. Chamberlain contends that IRS wrongdoing has been uncovered and publicized. As we have found, in agreement with the district court, that the IRS did not act improperly, this claim has no merit. Regarding the second and third criteria, Chamberlain's personal pecuniary and commercial interest in this litigation is large. He faces a $1.8 million deficiency claim for back taxes and penalties and has sought the documents involved here in order to prepare his defense. He

---

**51.** 5 U.S.C. § 552(a)(4)(E) provides:

The court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed.

**52.** 570 F.2d at 533 n.3.

**53.** *Id.* at 533; S.Conf.Rep.No.93–1200, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Admin.News, pp. 6285, 6288. Accord, *Nationwide Building Maintenance, Inc. v. Sampson,* 1977, 182 U.S.App.D.C. 83, 559 F.2d 704; *Vermont Low Income Advocacy Council, Inc. v. Usery,* 2 Cir., 1976, 546 F.2d 509.

**54.** *Id.* at 533–34.

needed no additional incentive to bring this FOIA suit.

Finally, given the number of documents withheld, including all the documents at issue in this appeal, we cannot conclude that the Government's refusal to release the documents was without a reasonable basis in law. Accordingly, we find that the district court properly exercised its discretion in denying Chamberlain's claim for attorneys' fees.

*Conclusion:*

To summarize our disposition of the issues raised on appeal, we find that the IRS' investigation of possible fraud regarding Chamberlain's tax liability for 1965 and 1966, including the second referral to the Intelligence Division, was proper and within the IRS' field of competence and responsibility. There can, therefore, be no proper contention that the documents collected in the course of the investigation are not protected by the FOIA exemptions.

Second, the procedures adopted by the district court to deal with the mass of documents involved were reasonable and within its discretion. Third, we hold that section 6103 of the Internal Revenue Code, as amended, satisfies the requirements of Exemption 3 of the FOIA and permits the Secretary to withhold return information concerning a taxpayer from that taxpayer if he determines that such disclosure would "seriously impair Federal tax administration." We further find that in this case all of the documents claimed by the Secretary to be return information are, at least insofar as they remain undisclosed, in fact return information and that the Secretary has adequately demonstrated that their release would seriously impair tax administration. We, therefore, affirm the district court's order to the extent that it ordered withheld those documents or parts of documents claimed by the Government to be return information and reverse the district court's order to disclose the six documents whose disclosure the Government contests on this appeal.

With regard to the five documents not claimed to be return information by the Government and withheld in whole or in part by order of the district court under Exemptions 5 or 6, we affirm the district court's order. Finally, we hold that the district court did not abuse its discretion in denying Chamberlain's request for attorneys' fees.

AFFIRMED IN PART AND RE-VERSED IN PART.