630 F.2d 428
 Rev. Dr. Frank D. LOVELL, Plaintiff-Appellant,
v.
J. F. ALDERETE, Hospital Administrator; J. Hanberry, Warden,
Atlanta Federal Penitentiary, Defendants-Appellees.
Frank D. LOVELL, Plaintiff-Appellant,
v.
Norman CARLSON, Director, Bureau of Prisons, et al.,
Defendants-Appellees.
 Nos. 79-2207, 79-2718.
 United States Court of Appeals,
Fifth Circuit.
 Nov. 14, 1980.
 
 John R. Lowery, Atlanta, Ga., for plaintiff-appellant.
 Leonard Schaitman, Appellate Staff, Marc P. Richman, Appellate Staff, Civ. Div., U. S. Dept. of Justice, Washington, D. C., for defendants-appellees.
 Appeals from the United States District Court for the Northern District of Georgia.
 Before VANCE, FRANK M. JOHNSON, Jr., and THOMAS A. CLARK, Circuit Judges.
 FRANK M. JOHNSON, Jr., Circuit Judge:
 
 
 1
 This is a consolidated appeal from the district court's orders in two separate actions brought pursuant to the Freedom of Information Act, 5 U.S.C. § 552, (1976) (FOIA) and the Privacy Act, 5 U.S.C. § 552a (1976) (PA). The district court dismissed both actions for mootness and denied plaintiff's request for disciplinary action, damages, and attorney's fees under the Acts.
 
 I. FACTS
 
 2
 In the first case (79-2207), Frank D. Lovell, an inmate of the Atlanta Federal Penitentiary, sought a copy of his eyeglass prescription from the prison's medical staff. His request was denied by the chief medical officer. Lovell appealed the denial of his request to the Bureau of Prisons Regional Office which also denied the request on the basis of an exemption for inmate health records. After making further non-productive inquiries, Lovell filed suit in the Northern District of Georgia. He sought release of the prescription under the FOIA, a 60-days' suspension of the defendants from employment, $10,000 in damages, and reasonable attorney's fees and court costs (Lovell I).
 
 
 3
 The Government responded to the complaint by releasing the requested prescription pursuant to a change in the United States Attorney General's guidelines concerning exemptions. Both parties filed summary judgment motions; the district court disposed of the motions by dismissing the case as moot since the document requested had been released. The court disallowed plaintiff's claims for costs as he had proceeded in forma pauperis. Further, the court ruled that Lovell was not entitled to recover attorney's fees since he had proceeded pro se. After applying the four-part test in Blue v. Bureau of Prisons, 570 F.2d 529 (5th Cir. 1978), the court concluded that, even if pro se litigants were entitled to attorney's fees, Lovell would not recover fees under the circumstances of this case, especially since there was no showing of malice or bad faith. The lower court declared the remainder of the suit moot.
 
 
 4
 In the second case (79-2718), Lovell directed to the Bureau of Prisons a request for a copy of an investigative report on the Atlanta Federal Penitentiary and any of his parole recommendation reports submitted by a judge or a United States Attorney. After the Bureau denied these requests, Lovell made further non-productive inquiries. He initially filed this action in the District of Columbia and it was subsequently transferred to the Northern District of Georgia (Lovell II).
 
 
 5
 Again, relying on the United States Attorney General's new guidelines, the Government released a copy of the Atlanta prison report approximately four months after the initial request. However, the other information requested was not released at that time. The Government filed a motion for summary judgment in which an affidavit erroneously stated that all of the requested information had been released.
 
 
 6
 The district court dismissed Lovell II for mootness on the basis of the Government's affidavit. Inexplicably, the court never received Lovell's opposition motion. In denying Lovell's request for attorney's fees the court referred to its opinion in Lovell I (which was decided on the same day) and plaintiff's pro se status; however, the court failed to directly apply Blue to the facts of Lovell II.
 
 
 7
 Lovell moved to reconsider the case since his request for the parole recommendation forms still had not been met. The court denied this motion in light of the Government's subsequent release of the requested forms. Lovell currently has all of the documents he requested.
 
 
 8
 Lovell contends on appeal that the court erred in dismissing both cases for mootness and by failing to consider the remaining issues of disciplinary action and damages. His main contention on appeal concerns the district court's failure to award him, a pro se litigant, attorney's fees in either suit under the FOIA and PA provisions. We affirm in both cases.
 
 II. DISMISSAL OF THE ACTIONS
 
 9
 The record clearly shows that Lovell has received all of the information he sought in Lovell I. Even though the information he sought in Lovell II was delivered late, Lovell now has all of the information he requested in that case. The district court correctly dismissed both actions for mootness to the extent that documents were sought. Carr v. Saucier, 582 F.2d 14, 15 (5th Cir. 1978).
 
 
 10
 We also find that the court was correct in dismissing Lovell's request for disciplinary action and damages pursuant to the FOIA § 552(a)(4)(F) and the PA § 552a(g)(4)(A). However, this request was properly denied because of the failure to meet certain requirements rather than the mootness of the request. Those sections require that, before disciplinary action can be taken or damages can be awarded, it is necessary that the court (1) order production of improperly withheld documents (2) assess attorney's fees and other litigation costs against the Government and (3) issue a written finding that the agency personnel may have acted arbitrarily and capriciously. 5 U.S.C. § 552(a)(4)(F) (1976); 5 U.S.C. § 552a(g)(4)(A) (1976). The court took none of these required actions; in fact the court found no showing of malice or bad faith. Our examination of the record reveals no basis for a finding of malice or bad faith. Accordingly, we find Lovell's claims for disciplinary action and damages are without foundation or merit. See, generally, K. Davis, 1 Administrative Law Treatise, § 5:22 (2d ed. 1978).
 
 
 11
 Even though Lovell's suits were mooted by the production of the requested documents, mootness does not automatically preclude an award of attorney's fees. Cuneo v. Rumsfeld, 553 F.2d 1360, 1364 (D.C.Cir.1977); cf. Doe v. Marshall, 622 F.2d 118 at 119 (5th Cir. 1980). We will now examine the issue of attorney's fees in some detail.
 
 III. ATTORNEY'S FEES
 
 12
 The issue of whether a pro se litigant may recover attorney's fees against the Government in an action brought pursuant to the FOIA and PA is one of first impression in this Court. However, since our recent decision in Blue v. Bureau of Prisons, 570 F.2d 529 (5th Cir. 1978), disposes of Lovell's claims, we need not answer the broader question of whether a pro se litigant is ever entitled to recover attorney's fees in a FOIA or PA case.[1] We agree with the district court that, even assuming pro se litigants in some cases may be entitled to an award under these Acts, Lovell would still not recover attorney's fees under the circumstances in these cases.
 
 
 13
 It is clear that an attorney's fees award under the FOIA or PA is discretionary rather than presumptive as in civil rights cases. Blue v. Bureau of Prisons, supra, 570 F.2d at 533. Congress enumerated four criteria that courts are to view as flexible guidelines and are to evaluate in light of the fundamental legislative policies underlying the Acts. Nationwide Building Maintenance, Inc. v. Sampson, 559 F.2d 704, 710-716 (D.C.Cir. 1977).[2] Once a plaintiff has substantially prevailed and thus become eligible for an award of attorney's fees, a court should determine whether the plaintiff is entitled to the award in light of these criteria:
 
 
 14
 (1) The benefit to the public deriving from the case;
 
 
 15
 (2) the commercial benefit to the complainant;(3) the nature of the complainant's interest in the records sought; and
 
 
 16
 (4) whether the government's withholding of the records sought had a reasonable basis in law.
 
 
 17
 Blue v. Bureau of Prisons, supra, 570 F.2d at 533. Additionally, the court may consider any relevant equitable factors that may affect its balancing of the criteria above. Id. at 533.
 
 
 18
 Lovell argues that, since the Government has released all of the information he requested, he has "substantially prevailed" for the purposes of § 552(a) (4)(E) and § 552a(g)(3)(B) and he is eligible for an attorney's fees award. The mere fact that the information sought was not released until after the suit was instituted without more is insufficient to establish that Lovell "substantially prevailed" in either of his suits.[3] Cox v. United States Dept. of Justice, supra, 601 F.2d at 6. Absent a court order in his favor, plaintiff must show that prosecution of the action could reasonably be regarded as necessary to obtain the information and that the action had a substantive causative effect on the delivery of the information. Id. at 6, citing Vermont Low Income Advocacy Council, Inc. v. Usery, supra, 546 F.2d at 514.
 
 
 19
 We doubt that Lovell has met the standard set out in Cox since the Government's compliance with his request was not caused mainly by the institution of the suit, but rather was affected by a change in the United States Attorney General's guidelines concerning disclosure of exempted materials.[4] But even if we assume arguendo (as did the district court) that Lovell had substantially prevailed within the meaning of the Acts, he is still not entitled to an award since he fails to meet the criteria in Blue. We now apply those criteria to these appeals.
 
 A. Lovell I
 
 20
 The district court applied the tests in Blue to this action and held that Lovell was not entitled to attorney's fees. The court found that the disclosure of Lovell's eyeglass prescription under the first criterion served no public benefit; that under the second and third criteria[5] plaintiff's interest was not commercial, but it was a personal health benefit; and that under the fourth criterion the Government had a reasonable basis in law for its denial. Further, the court declined to penalize the Bureau for its voluntary compliance with the plaintiff's request. Given these circumstances, and the absence of a showing of malice or bad faith, the court denied Lovell's request for attorney's fees. We agree.
 
 
 21
 (1) Public Benefit
 
 
 22
 The disclosure of Lovell's eyeglass prescription is a matter of private concern: the "public benefit" factor has not been used to subsidize a private matter such as the one involved here. Blue v. Bureau of Prisons, supra, 570 F.2d at 533-34. This disclosure will in no way add to the fund of knowledge citizens use when making vital political choices. Id. at 534.
 
 
 23
 (2) Commercial Benefit to Complainant and
 
 
 24
 (3) The Nature of his Interest in the Records Sought
 
 
 25
 The plaintiff clearly would receive no commercial benefit in the disclosure which is a factor in his favor.[6] See, e. g., Chamberlain v. Kurtz, 589 F.2d 827, 842 (5th Cir. 1979) (commercial benefit clear since plaintiff faced possible.$1.8 million deficiency claim). However, Lovell's interest in his prescription is a wholly personal one. While we will not say it was of a "frivolous nature," it clearly is not "scholarly or journalistic or public-interest oriented." Nationwide Building Maintenance, Inc. v. Sampson, supra, 559 F.2d at 712.
 
 
 26
 (4) Basis for Government's Withholding
 
 
 27
 The Government initially claimed that Lovell's prescription as a prisoner's health record was exempt from disclosure under 28 C.F.R. 16.97(a)(6) (1979). See 5 U.S.C. § 552(b)(3) (1976).[7] It released the prescription after the United States Attorney General changed the policy governing exemptions. The record does not reveal that the "withholding appeared to be merely to avoid embarrassment or to frustrate the requester." Nationwide Building Maintenance, Inc. v. Sampson, supra, 559 F.2d at 712. Accordingly, we find that the withholding was not clearly unreasonable.
 
 
 28
 Since none of the four criteria nor any other relevant factors tip the balance in Lovell's favor, we hold that the district court did not abuse its discretion in denying an attorney's fees award to Lovell.
 
 B. Lovell II
 
 29
 The district court denied Lovell's request for attorney's fees, citing its opinion in Lovell I which was decided on the same day. While Lovell I clearly utilized Blue 's four-part test, the district court more properly should have directly applied Blue to this action. However, such error was harmless since our application of the Blue test reveals that the district court was correct in its denial of attorney's fees. Cf. Rabalais v. Dresser Industries, Inc., 566 F.2d 518, 519 (5th Cir. 1978).
 
 
 30
 (1) Public Benefit
 
 
 31
 Lovell made two distinct requests for information: one was for his parole recommendation file and the second was for an investigative report on the Atlanta prison. His parole recommendation file if disclosed would serve no discernible public benefit[8] and is essentially a private matter. Blue v. Bureau of Prisons, supra, 570 F.2d at 533.
 
 
 32
 The second request would appear to have some public benefit. However, when we weigh the degree of dissemination and likely public impact of this report, we cannot conclude that this factor of public benefit would justify an assessment of fees against the government, especially since it released the report within a few months of Lovell's request.
 
 
 33
 (2) Commercial Benefit and
 
 
 34
 (3) The Nature of his Interest in the Records Sought
 
 
 35
 Again, it is apparent that Lovell would receive no commercial benefit from the disclosure of the documents sought in either of the two requests. Thus this factor points in plaintiff's favor.
 
 
 36
 But it is also clear that Lovell's interest in both reports is a personal one;[9] nor would it seem that his interest is scholarly or public-interest oriented. Nationwide Building Maintenance, Inc. v. Sampson, supra, 559 F.2d at 712. This factor does not point in Lovell's favor.
 
 
 37
 (4) Basis for Government's Withholding
 
 
 38
 Since both documents requested by Lovell arguably fall within an exemption to the FOIA, we cannot say the withholding had no reasonable basis in law. See 5 U.S.C. § 551(1)(B) (1976); 5 U.S.C. § 552(b)(7) (1976); 5 U.S.C. § 552a(j) (1976). Lovell asked the prison for any parole recommendation report filed by a judge or a United States Attorney in a March 1978 letter. The parole recommendation report prepared by the sentencing district court judge (Form 235) constitutes a court report and thus is exempt from disclosure.[10] The other form requested is prepared by the United States Attorney's Office (Form 792) and may be exempted from disclosure under 18 U.S.C. § 4208(c) (1976). See 5 U.S.C. § 552(b)(3) (1976), quoted at note 7 supra. The report on the Atlanta prison on its face would appear to fall under the exemption for "investigatory records compiled for law enforcement purposes" 5 U.S.C. § 552(b)(7) (1976); 5 U.S.C. § 552a(k)(2) (1976); however, if the report were still in dispute, the remaining conditions under § 552(b)(7) would require examination to see if the report was in fact exempt. Accord: Environmental Protection Agency v. Mink, 410 U.S. 73, 93, 93 S.Ct. 827, 838, 35 L.Ed.2d 119 (1973). However, this examination is unnecessary here since Lovell did receive both the report on the prison and the only form (Form 792) in his parole recommendation file.
 
 
 39
 We have weighed each of the four criteria and have concluded that the court properly acted within its discretion in denying Lovell's request for attorney's fees in this action.
 
 
 40
 Both cases are AFFIRMED.
 
 THOMAS A. CLARK, Circuit Judge, dissenting:
 
 41
 I dissent from that part of the decision and opinion that denies attorney fees. The facts of this case more than fulfill the requirements of the Blue[1] criteria as I construe the facts and the law.
 
 
 42
 In Lovell I plaintiff requested a copy of his eyeglass prescription from the Bureau of Prisons in April of 1977. The doctor at the prison refused to furnish the prescription. The government's brief at page 3 states the following:
 
 
 43
 Appellant then appealed to the BOP regional office (R. 10), which denied the request because inmate health records had been exempted by the Attorney General (R. 10-11). See 28 C.F.R. 16.97(a)(6). Appellant's further appeal to the BOP national office was inexplicably referred back to the regional office (R. 13). Appellant questioned the referral (R. 14); he later made two inquires to the regional office, the last in November 1977 (R. 15, 16), but apparently heard nothing further.
 
 
 44
 Appellant was told nothing, and he filed suit seeking the prescription in March, 1978. In April, 1978, the Government furnished the prescription.
 
 
 45
 The Government at no time gave any explanation of why the prescription was not disclosed.[2] In furnishing the prescription and filing its answer to the complaint the Government stated it was doing so pursuant to guidelines established by the Attorney General. It is obvious that the lawsuit brought forth the document rather than any change in guidelines as I shall try to demonstrate. See 28 C.F.R. 16.97.[3] The prescription was not exempt from disclosure as can be seen from reference to Regulation 16.97 as set forth in the footnote and particularly those portions emphasized. Further, the claim by the Government that the prescription was released in April, 1978, pursuant to recent changes in guidelines established by the Attorney General fails because the Attorney General's letter quoted in Footnote 4 of the majority opinion was written on May 5, 1977. Since the Bureau of Prisons is part of the Department of Justice one would not think that it would take the Bureau so long to react to the Attorney General's letter trying "to impress upon all levels of government the requirements, and the spirit of the Freedom of Information Act."
 
 
 46
 Consequently, it is my opinion that there was no basis for the Government's withholding the document requested by plaintiff, the lawsuit was the catalyst which brought forth the document, and the fourth criterion of Blue is fulfilled and is alone enough to support an award of attorney's fees.
 
 
 47
 Concerning the first Blue standard, benefits to the public deriving from the case, this judge sees considerable benefit to the public in awarding attorney fees in this type of case. Congress passed the law. The agencies are creatures of the United States Government and should obey the laws passed by the very government creating them. Every small step in the direction of forcing governmental agencies to comply with the law is a step forward for the public. If enough suits are filed and enough attorney fees are awarded,[4] perhaps the agencies will undertake the practice required of citizens-obedience to the laws. Denial of attorney fees discourages lawsuits against the Government and encourages the agencies to ignore citizens' requests.
 
 
 48
 In Blue our court, referring to the Senate Conference Report, said the following:
 
 
 49
 In the second and third criteria for attorneys' fee awards, "the commercial benefit to the complainant and the nature of his interest in the case," the Senate Report showed a preference for public interest groups, indigents and disinterested scholars over private commercial enterprises' efforts for disclosure. The reason relates to assuring judicial review over agency decisions against disclosure. Both houses of Congress had heard witnesses who pointed out that without attorneys' fees litigation costs prevented motive, and often pecuniary benefit to the complainant will be sufficient to insure the vindication of rights given in the FOIA." Id. at 19.
 
 
 50
 From S.Rep.No.854, 93d Cong., 2d Sess. 19 (1974)[5]
 
 
 51
 If I understand these two criteria correctly, the emphasis is that the need for attorney fees diminishes if the seeker of the documents is going to make a profit or other benefit from the documents or if the nature of his interest in the records is such that it will further the person's business. If the interest vindicated is purely private one should lean toward awarding attorney fees. If it's a business interest, one would lean in the other direction. These factors, too, favor an award of fees under the circumstances of this case.
 
 
 52
 I conclude that there was a benefit to the public in making the Government agency obey the Government's laws, there was no commercial benefit to the plaintiff, the nature of his interest in the record sought was personal and not business or financial, and there was absolutely no legal basis for the Government to refuse to send this man his eyeglass prescription.
 
 
 53
 The facts of Lovell II are even more egregious. The first document was received four months after suit was filed. One of the two reports sought by plaintiff was not furnished him until the Government filed its brief in this court in connection with this appeal, notwithstanding the fact that the Government in its answer and pleadings continually represented to the court that the Government had furnished all of the documents requested. These representations formed the basis of the trial court's dismissal of the plaintiff's case as being moot. It did not become moot, in fact, until after the appeal was filed.
 
 
 54
 What I have said with respect to Lovell I applies to the first three Blue criteria, public benefit, commercial benefit, and nature of interest in the records sought. I do not concur with the majority with respect to the fourth Blue factor-the basis for the Government's withholding of the documents. I do not find any suggestion that the parole recommendation report was prepared for the courts and thus comes under the exemption set forth in 5 U.S.C. § 551(1) (B), 5 U.S.C. § 552(b)(7), or 5 U.S.C. § 552a(j),[6] as suggested by the majority. The document apparently is prepared for the Board of Parole and contains information related to parole of the subject-information the accuracy of which would be of great interest to a person behind bars. There is no claim by the Government that the Department of Justice had designated this document to be exempt from disclosure under 5 U.S.C. 552a(j). The Government in no way demonstrated that either of the documents involved fell within the exemptions, and the burden of proving any exemption is the Government's to bear.[7]
 
 
 55
 I dissent from the court's holding that attorney fees were not allowable under these facts.[8]
 
 
 56
 Differing from my brethren in my evaluation of the facts in light of the Blue criteria, I must answer the question the majority concludes they need not ask, namely, whether a pro se litigant may recover attorney fees against the Government in an action brought pursuant to FOIA and the Privacy Act. This issue has not been decided by the Fifth Circuit. The statute[9] provides that "(t)he court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed." Can a person acting in his own behalf in the enforcement proceedings against the Government be paid for his time and efforts or is the Government only required to pay when the person had an attorney acting in his behalf?
 
 
 57
 Several reasons favor the availability of attorney fees for the successful FOIA complainant who also proceeds pro se. First, his time has value and he should be compensated for it. Second, faced with only a pro se complainant, the Government can resist disclosure right up to the point of losing and still escape the penalty of attorney fees. Yet fees are a useful sanction for unfounded resistance to a disclosure request, and we should not distinguish between those making such requests, on the basis of whether or not they have lawyers, in a way that will cause the Government to be more solicitous of the represented than of those who proceed on their own. Third, the availability of attorney fees would encourage those who cannot afford a lawyer to seek relief through the courts without their having to convince an attorney to accept a contingent fee arrangement, and they should be encouraged to enforce their rights, not discouraged.
 
 
 58
 The amendment to permit attorney fees was passed in 1974 and there is yet only a meager body of law on the subject. The principal case is Cuneo v. Rumsfeld[10] in which the court was considering whether fees should be paid to a person representing himself. Cuneo was an attorney and had sought documents from the Department of Defense which would benefit him in his practice. Holding that Cuneo was eligible to be paid attorney fees notwithstanding his representation of himself, the court at page 1366 of the opinion said:
 
 
 59
 The trial court found that since Cuneo and the person appearing on his behalf were partners in the same law firm they were appearing in propria persona and therefore Cuneo did not incur any liability to pay attorney fees. Since he did not incur any liability for attorney fees the court ruled he was not entitled to an award because section 552(a)(4)(E) only authorizes a court to assess "reasonable attorney fees and other litigation costs reasonably incurred ...." 5 U.S.C. § 552(a)(4)(E) (Supp. V 1975). The law is not clear on the question of whether a party appearing on his own behalf, who is also an attorney, is entitled to tax attorney fees as costs. In light of the legislative history of section 552(a)(4)(E), a complainant, who is otherwise eligible under that section for an award of attorney fees, should not be denied those fees simply because he happens to be an attorney. We find the reasoning of Judge Bryant in Holly v. Acree, 72 F.R.D. 115 (D.D.C.1976) to be persuasive. Judge Bryant found that the wording of section 552(a)(4)(E) shows that the phrase "reasonably incurred" modifies the phrase "other litigation costs", and not the larger phrase "reasonable attorney fees and other litigation costs". Id. at 116. The court reasoned that the use of the word "reasonable" immediately preceding and modifying "attorney fees" precludes the conclusion that another phrase containing the word "reasonable" is used to modify "attorney fees" as well. Id. Judge Bryant therefore held that attorney fees need not be "actually incurred" to be within the ambit of a costs award under section 552(a)(4)(E). Id. We agree.
 
 
 60
 The policy considerations underlying the FOIA support this conclusion. In enacting section 552(a)(4)(E) Congress sought to lower the barriers facing the average person requesting information. Furthermore, successful FOIA litigants enhance the public interest by bringing the government into compliance with the law. As agents of the national policy of public disclosure it is equitable that they be awarded for their service.
 
 
 61
 (Footnotes omitted.)
 
 
 62
 One cannot justifiably assert that an attorney representing himself is more entitled to a fee than a lay person representing himself. The courts are open to everyone-those who can afford to pay an attorney and those who have to do it themselves. The latter are just as entitled to be paid as the former are to be reimbursed.
 
 
 63
 For these reasons, I DISSENT.
 
 
 
 [1]
 Compare Cox v. U. S. Dept. of Justice, 601 F.2d 1 (D.C.Cir.1979); Marshner v. U. S. Dept. of State, 470 F.Supp. 196 (D.Conn.1979) with Burke v. U. S. Dept. of Justice, 559 F.2d 1182 (10th Cir. 1977); Barrett v. U. S. Customs Service, etc., 482 F.Supp. 779 (E.D.La.1980)
 
 
 [2]
 The central purpose of the FOIA is openness in government to assist citizens in making informed choices so vital to a popular form of government. Blue v. Bureau of Prisons, supra, 570 F.2d at 533, citing S.Rep.No. 854, 93d Cong., 2d Sess. 2 (1974). The main purpose of the PA is to forbid disclosure unless such disclosure is required by the FOIA. 5 U.S.C. § 552a(b)(2) (1976). Both Acts have identical attorney's fees provisions:
 The court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed. 5 U.S.C. § 552(a)(4)(E) (1976); 5 U.S.C. § 552a(g)(3)(B) (1976).
 The purpose of this section was to remove the often insurmountable financial barriers the average citizen faced when attempting to force governmental compliance with these Acts, not to provide an award to any plaintiff who successfully forced the government to disclose the requested information. Nationwide Building Maintenance, Inc. v. Sampson, supra, 559 F.2d at 711.
 
 
 [3]
 On the other hand, it has been established that in order to substantially prevail, a plaintiff need not receive a court judgment in his favor if his action helped induce disclosure. Vermont Low Income Advocacy Council, Inc. v. Usery, 546 F.2d 509 (2d Cir. 1976)
 
 
 [4]
 The Attorney General of the United States wrote to all agencies to say that: "The government should not withhold documents unless it is important to the public interest to do so, even if there is some arguable legal basis for the withholding," and that "the Justice Department will defend Freedom of Information Act suits only when disclosure is demonstrably harmful, even if the documents fall within the exemptions in the Act." 123 Cong.Rec.S. 7763 (May 7, 1977); K. Davis, 1 Administrative Law Treatise, § 5:1 (2d ed. Supp. 1980)
 
 
 [5]
 These two tests are often considered together. "It seems logical to read these criteria together when a private plaintiff has pursued a private interest." Werner-Continental, Inc. v. Farkas, 478 F.Supp. 815, 817 (S.D. Ohio 1979)
 
 
 [6]
 The fees award section was intended to encourage complainants who lacked substantial private and pecuniary incentive to pursue their claims. If the potential for private commercial benefit is high, such complainants have sufficient incentive to pursue their claims thus meeting the policy objectives of § 552(a)(4)(E); in such situations a court may properly deny an award of fees. Cuneo v. Rumsfeld, supra, 553 F.2d at 1368. Lovell lacks a substantial commercial incentive
 
 
 [7]
 This subsection of the FOIA allows an exemption when another statute creates an exemption "provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3) (1976)
 
 
 [8]
 In fact, if such a file contained names of confidential sources, such disclosure could have a negative impact. See Smith v. Flaherty, 465 F.Supp. 815 (M.D.Pa.1978)
 
 
 [9]
 The reason why Lovell wants the report on the prison is not particularly relevant in a FOIA case. FOIA was designed to help "any person" to receive information from the government. "Any person" includes prisoners. See K. Davis, 1 Administrative Law Treatise § 5:7 (2d ed. 1978)
 
 
 [10]
 Courts do not fall within the reach of the FOIA. 5 U.S.C. § 551(1)(B) (1976); see Smith v. Flaherty, supra, 465 F.Supp. at 819. The parole recommendation file did not contain a Form 235
 
 
 [1]
 Blue v. Bureau of Prisons, 570 F.2d 529 (5th Cir. 1978)
 
 
 [2]
 The statute, 5 U.S.C. 552(a)(6)(A), requires the agency to determine within ten days whether to comply with a disclosure request and to immediately notify the person seeking a document the "determination and the reasons therefor."
 
 
 [3]
 § 16.97 Exemption of Bureau of Prisons Systems-Limited Access
 (a) The following systems of records are exempt from 5 U.S.C. 552a(c)(3) and (4), (d), (e)(2) and (3), (e)(4)(H), (e)(8), (f) and (g):
 (6) Inmate Physical and Mental Health record System (JUSTICE/BOP-007).
 These exemptions apply only to the extent that information in these systems is subject to exemption pursuant to 5 U.S.C. 552a(j).
 (b) Exemptions from the particular subsections are justified for the following reasons:
 (3) From subsection (d) because exemption from this subsection is essential to protect internal processes by which Bureau personnel are able to formulate decisions and policies with regard to federal prisoners, to prevent disclosure of information to federal inmates that would jeopardize legitimate correctional interests of security, custody, or rehabilitation, and to permit receipt of relevant information from other federal agencies, state and local law enforcement agencies, and federal and state probation and judicial offices.
 (c) Consistent with the legislative purpose of the Privacy Act of 1974 (Pub.L. 93-579) the Bureau of Prisons will initiate a procedure whereby federal inmates in custody may gain access and review their individual prison files maintained at the institution of incarceration. Access to these files will be limited only to the extent that the disclosure of records to the inmate would jeopardize internal decision-making or policy determinations essential to the effective operation of the Bureau of Prisons ; to the extent that disclosure of the records to the inmate would jeopardize privacy rights of others, or a legitimate correctional interest of security, custody, or rehabilitation ; and to the extent information is furnished with a legitimate expectation of confidentiality. (Emphasis added.)
 
 
 [4]
 Fees are paid from funds already budgeted to the agency
 
 
 [5]
 Congress has established in the FOIA a national policy of disclosure of government information, and the committee finds it appropriate and desirable, in order to effectuate that policy, to provide for the assessment of attorneys' fees against the government where the plaintiff prevails in FOIA litigation. Further, as observed by Senator Thurmond:
 We must insure that the average citizen can take advantage of the law to the same extent as the giant corporations with large legal staffs. Often the average citizen has foregone the legal remedies supplied by the Act because he has had neither the financial nor legal resources to pursue litigation when his Administrative remedies have been exhausted. (Hearings, Vol. I at 175.)
 Joint Committee Print, Freedom of Information Act and Amendments of 1974, Source Book: Legislative History, Texts and Other Documents (94th Cong. 1st Sess.) at page 99.
 
 
 [6]
 5 U.S.C. § 552(b):
 (7) investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would (A) interfere with enforcement proceedings (B) deprive a person of a right to a fair trial or an impartial adjudication, (C) constitute an unwarranted invasion of personal privacy, (D) disclose the identity of a confidential source and, in the case of a record compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, confidential source, (E) disclose investigative techniques and procedures, or (F) endanger the life or physical safety of law enforcement personnel;
 5 U.S.C. § 552a(j):
 General exemptions.-The head of an agency may promulgate rules, in accordance with the requirements (including general notice) of sections 553(b)(1), (2), and (3), (c), and (e) of this title, to exempt any system of records within the agency from any part of this section except subsections (b), (c)(1) and (2), (e)(4)(A) through (F), (e)(6), (7), (9), (10), and (11), and (i) if the system of records is-
 (1) maintained by the Central Intelligence Agency; or
 (2) maintained by an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws, including police efforts to prevent, control, or reduce crime or to apprehend criminals, and the activities of prosecutors, courts, correctional, probation, pardon, or parole authorities, and which consists of (A) information compiled for the purpose of identifying individual criminal offenders and alleged offenders and consisting only of identifying data and notations of arrests, the nature and disposition of criminal charges, sentencing, confinement, release, and parole and probation status: (B) information compiled for the purpose of a criminal investigation, including reports of informants and investigators, and associated with an identifiable individual; or (C) reports identifiable to an individual compiled at any stage of the process of enforcement of the criminal laws from arrest or indictment through release from supervision.
 At the time rules are adopted under this subsection, the agency shall include in the statement required under section 553(c) of this title, the reasons why the system of records is to be exempted from a provision of this section.
 
 
 [7]
 5 U.S.C. 552(a)(4)(B):
 In such a case the court shall determine ... whether such records or any part thereof shall be withheld under any of the exemptions set forth in subsection (b) of this section, and the burden is on the agency to sustain its action. (Emphasis added.)
 
 
 [8]
 Neither Blue, todays's majority, nor I should be read to intimate that all four of the criteria must be affirmatively present in order to permit an award of attorney fees. Further, we must keep in mind that the Senate Conference report eliminated the criteria from the final version of the bill adopted by conference and in the Conference report explained that, "by eliminating these criteria, the conferees did not intend to make the award of attorney fees automatic or to preclude the courts, in exercising their discretion as to awarding such fees, to take into consideration such criteria." Blue, 576 F.2d at 533
 
 
 [9]
 5 U.S.C. § 552(a)(4)(E)
 
 
 [10]
 553 F.2d 1360 (D.C.Cir.1977)