**NEW ENGLAND APPLE COUNCIL, INC.**

v.

**Raymond J. DONOVAN, Secretary of Labor.**

**Civ. A. No. 80-2925-Z.**

United States District Court, D. Massachusetts.

Aug. 9, 1985.

S. Steven Karalekas, Charles, Karalekas, Bacas & McCahill, Washington, D.C., for plaintiff.

John Laymon and Karen Green, Asst. U.S. Attys., Boston, Mass., for defendant.

## MEMORANDUM OF DECISION

ZOBEL, District Judge.

Plaintiff New England Apple Council, Inc. has filed an application for attorney fees and litigation costs incurred during its attempt to gain release of information from defendant pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, *et seq.* (1982). The statute provides that: "The Court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E) (1982).

### FACTS

In 1979 the Department of Labor ("DOL") undertook a grand jury investigation of plaintiff's members relating to foreign labor clearance applications which they had filed with defendant in 1978. The government decided in November, 1979, not to prosecute. On February 15, 1980, plaintiff filed a request under FOIA for all records in defendant's possession relating to the investigation. On March 13, 1980, the Inspector General of DOL denied the request, as did the Solicitor General on October 22, 1980.

On December 2, 1980, plaintiff filed a complaint in this court to compel defendant to produce the records in question. Several months later, on February 20, 1981, de-

fendant released a group of documents. Portions of these documents had been deleted, and others which had been requested continued to be withheld.

In May 1982, this Court ordered defendant to file a *Vaughn* affidavit. *Vaughn v. Rosen*, 484 F.2d 820 (D.C.Cir.1973), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974). The filing was accompanied by the disclosure of a small amount of additional information. Both parties moved for summary judgment on the validity of defendant's continuing refusal to disclose certain information. This Court ordered some items of information to be disclosed and determined others to be properly withheld. The First Circuit, on appeal, determined that some items that this Court had ordered disclosed were, instead, properly withheld.

DISCUSSION

A motion for fees under FOIA requires a two-part analysis: (1) is the plaintiff "eligible" for such an award; and if so, (2) is it "entitled" to such an award? *Church of Scientology v. Harris*, 653 F.2d 584, 587 (D.C.Cir.1981); *Fund for Constitutional Government v. National Archives*, 656 F.2d 856, 870 (D.C.Cir.1981). On the first question, an FOIA plaintiff is eligible if it has "substantially prevailed." The phrase has been interpreted to mean that the plaintiff must show that prosecution of the action could reasonably be regarded as necessary to obtain the information, *Vermont Low Income Council, Inc. v. Usery*, 546 F.2d 509, 513 (2d Cir.1976), and that a causal nexus exists between that action and the agency's disclosure of the information, *Cuneo v. Rumsfeld*, 553 F.2d 1360, 1365 (D.C.Cir.1977), *cited in Church of Scientology of California v. Harris*, 653 F.2d at 588.

█ Under these criteria, plaintiff has substantially prevailed. Prior to bringing suit to compel disclosure, it had pursued its request through the available administrative channels and was denied. From plaintiff's perspective, suit was necessary to obtain the information. Further, defendant's release of the bulk of the documents in February, 1981, occurred relatively shortly after suit was instituted in this Court on December 2, 1980. Defendant released additional information that plaintiff requested only when this Court ordered it to file a *Vaughn* affidavit and, later, to make disclosure. On these facts I infer a causal relationship between plaintiff's institution of suit and defendant's disclosure. Plaintiff therefore "substantially prevailed" in its suit within the meaning of the statute and is thus "eligible" to receive an award of attorney's fees.

When an FOIA plaintiff is eligible to receive an award of fees and costs, the decision of whether it is "entitled" to do so lies within the discretion of the court. *Cuneo v. Rumsfeld*, 553 F.2d at 1365; S.Rep. No. 854, 93d Cong., 2d Sess. 17 (1974). Four criteria were recognized in the Congressional reports on the FOIA as useful in guiding the court's discretion. *See* Conf. Rep. No. 93–1200, 93d Cong., 2d Sess., *reprinted in* 1974 U.S. Code Cong. & Ad. News 6267, 6288; *Fenster v. Brown*, 617 F.2d 740, 742 (D.C.Cir.1979).

█ First, the Court may consider what, if any, benefit accrued to the public through plaintiff's request for and receipt of information. Plaintiff states that it requested information in an effort to ascertain the basis for defendant's investigation. The asserted public benefit lay in monitoring the agency's investigative mechanisms and ensuring "that future investigations would be based on proper facts and motives." Plaintiff does not allege fraud by defendant, however, and does not present any evidence that the investigation in fact arose from improper motives. The benefit to the public from plaintiff's request, then, was marginal at best.

The second and third factors, the commercial benefit of the information to the plaintiff and the nature of plaintiff's interest in it are appropriately considered together. The relevant inquiry is whether plaintiff personally benefitted from the information and therefore should bear the cost of the suit. Here, plaintiff asserts and

defendant concedes that plaintiff was not motivated by commercial gain in its FOIA request. It sought to determine that the investigation, which was carried out at some expense to plaintiff, was unjustified. The benefit to plaintiff and its members was to put the agency on guard concerning future investigations of plaintiff's members. Thus, the nature of plaintiff's interest was primarily personal rather than public in nature.

Finally, the reasonableness of defendant's refusal to release information must be examined. For purposes of discussion, the progress of this FOIA request and defendant's justification for withholding information can be divided into two phases, the events before and the events after the release of the bulk of the documents of February 20, 1981.

In the first phase, defendant relied on exemption 552(b)(7)(A), which provides for the withholding of investigatory records compiled for law enforcement purposes, to the extent that disclosure would interfere with enforcement. Defendant states through the affidavit of Sofia Petters, counsel for the Office of the Solicitor of Labor, that after the grand jury investigation of plaintiff had been concluded, defendant transferred the relevant records to the Employment and Training Administration of the Department of Labor ("ETA"), which was then to assess whether to deny a future labor certification to plaintiff's members under 20 C.F.R. § 655.210. Ms. Petters states that this assessment was pending in March, 1980, at defendant's first denial of the FOIA request, and still pending in October, 1980, at the denial of plaintiff's administrative appeal. Thus, defendant argues, it was justified in withholding the information until ETA had decided whether to proceed with its enforcement action. Between December, 1980, when plaintiff filed suit, and February, 1981, when the bulk of the documents were released, Ms. Petters contacted the ETA again and learned that it had decided not to impose sanctions. Therefore, according to Ms. Petters, defendant was then able to release, in February, 1981, most of the documents sought.

The factual assertions underlying defendant's justification for its actions prior to February, 1981, remain essentially uncontradicted. Plaintiff argues, instead, that defendant's reliance on the ongoing inquiry by ETA was unjustified because under the governing regulation, ETA did not have authority to impose civil sanctions against plaintiff's members after 1979. The relevant regulation, 20 C.F.R. § 655.-210(a), states:

If, after the granting of a temporary labor certification, the [Regional Administrator] ["RA"] has probable cause to believe that an employer has not lived up to the terms of the temporary labor certification, the RA shall investigate the matter. If the RA concludes that the employer has not complied with the terms of the labor certification, the RA may notify the employer that it will not be eligible to apply for a temporary labor certification in the coming year.

Plaintiff argues that the words "in the coming year" mean that if the ETA investigates an employer's practices, it can only deny a labor certification to that employer for the year following the year in which the questioned practices occurred. Since here the questioned practices occurred in 1978, plaintiff asserts that ETA could not legally impose the specified civil sanction against plaintiff's members once it had accepted their labor certification applications for 1979. Thus, plaintiff's argument goes, since ETA's allowable period for investigation expired in 1979, any reliance by defendant on exemption 7(A) after 1979 was unjustified.

In response, defendant states that ETA interprets the regulation to provide for the denial of labor certifications in the year following the agency's *discovery* that the employer has not complied with the terms of its labor certification. Neither party cites case law in support of its interpretation, but when the construction of an agency regulation is in issue, a court should

defer to the agency's interpretation unless it is plainly erroneous or inconsistent with the regulation. *Udall v. Tallman,* 380 U.S. 1, 16–17, 85 S.Ct. 792, 801–02, 13 L.Ed.2d 616 (1965). Here, ETA's interpretation is by far the more plausible of the two. Under plaintiff's interpretation, an agency would have to complete any investigation of an employer's labor certification practices within the year that those practices occurred, before it could determine whether to issue the employer a temporary certification "in the coming year." This construction of the regulation is not feasible in the context of the workings of administrative agencies and would unduly burden the agency. Thus, plaintiff has presented no cognizable factual or legal arguments to show that defendant's reliance on exemption (7)(A) until February, 1981, was not justified. On the evidence before me, then, defendant's actions before February, 1981, were not unreasonable.

In the period of time from February, 1981, to the present, defendant relied on exemptions 5, 7(C) and 7(D) to continue to withhold certain documents and portions of others. This Court granted defendant's motion for summary judgment on most of the documents withheld under exemption 5, and ordered disclosure of information held under 7(C) and (D). The First Circuit Court of Appeals reversed on the applicability in this case of 7(C) and (D), and allowed defendant to refuse to disclose names of certain persons who assisted in the grand jury investigation. Given this Court's decision on exemption 5, and the uncertainty of the law on 7(C) and (D), defendant's actions from February, 1981, to the present were also not unreasonable.

In conclusion, because the benefit accruing to the public from plaintiff's FOIA request was minimal; plaintiff's interest in the information was primarily personal; and defendant's withholding of the information was not unreasonable, plaintiff is not entitled to an award of attorney fees and costs arising from their FOIA request.