STATE OF TEXAS, Plaintiff–Appellant,

v.

INTERSTATE COMMERCE COMMISSION, Defendant–Appellee,

and

Armstrong World Industries, Inc., Appellee.

No. 90–8443.

United States Court of Appeals, Fifth Circuit.

July 18, 1991.

Robert Ozer, Atty. Gen., Sharon Felfe, and Anne Swenson, Asst. Attys. Gen., Austin, Tex., for plaintiff-appellant.

Peter R. Maier, and Leonard Schaitman, Dept. of Justice, Appellate Staff, Civ. Div., and Michael L. Martin, Office of Gen. Counsel, I.C.C., Washington, D.C., for defendant-appellee.

William P. Jackson, Jr., Arlington, Va., for Armstrong World.

Before REAVLEY, HIGGINBOTHAM, and DUHÉ, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

The state of Texas sued the Interstate Commerce Commission under the Freedom of Information Act to force the ICC to disclose certain documents. The district court ruled that, of the eleven documents withheld by the ICC, six had to be disclosed. We affirmed that ruling. Texas then moved for attorneys fees under 5 U.S. C.A. § 552(a)(4)(E) (West 1977). The district court denied the motion on two grounds: First, the court argued that states are ineligible to receive attorneys fees under FOIA. Second, under the four discretionary criteria traditionally applied by courts in awarding fees under FOIA, the court found that Texas was not entitled to attorneys fees. We are persuaded that Texas is a complainant under the plain language of the statute but that the district court correctly refused to award fees in this case. We affirm.

## I

In March of 1985 Armstrong World Industries and Reeves Transportation Company petitioned the ICC for an order declaring that Armstrong's activities, shipping carpet to locations in Texas, were within interstate commerce and therefore authorized by Reeves's interstate certificate. While this action was pending before the ICC, Texas initiated a state enforcement action against Armstrong and also intervened in the ICC proceeding. The ICC denied Texas's request to stay its proceeding pending disposition of the state enforcement action and, on April 3, 1986, issued an order declaring that Armstrong's activities were authorized under Reeves's interstate certificate. We denied the petition to set aside the judgment.[1]

While the appeal of the April 3 order was pending before this court, Texas had filed a FOIA request with the ICC, seeking records pertaining to communications between the ICC and any other person about the proceeding underlying the April 3 order. The ICC produced some of the requested records, but withheld eleven doc-

---

1. *State of Texas v. United States,* 866 F.2d 1546 (5th Cir.1989).

uments, claiming them to be exempt intra-agency memoranda.[2]  Of the eleven documents, two were letters between counsel for Armstrong and the ICC discussing the proposed federal suit, four were letters from Armstrong to the ICC containing drafts of complaints and memoranda of law related to the proposed suit, three were internal ICC memos concerning its possible litigation strategies, and two were drafts of the ICC's April 3 order.

Texas then filed a complaint with the district court below.  The district court ordered the disclosure of six of the eleven documents, the correspondence between Armstrong and the ICC.  Armstrong moved to intervene in the appeal.  The district court rejected the motion as untimely, and we affirmed.  Armstrong participated in the appeal as an *amicus curiae*, and we affirmed the underlying order.[3]

Invoking § 552(a)(4)(E) of FOIA, Texas then filed a motion requesting $43,334.00 in costs and attorneys fees incurred in litigating against the ICC and Armstrong.  The district court denied the motion on two grounds.  First, the court held that Texas was ineligible for a fee award because only private citizens, and not governmental entities, were the intended beneficiaries of § 552(a)(4)(E).  Alternatively, the court held that Texas was not entitled to a fee award under the four traditional criteria, discussed below.  The district court denied Texas's motion for reconsideration and Texas appealed.

We review *de novo* the legal conclusion that states are not eligible to recover under § 552(a)(4)(E), and we review the alternative holding for abuse of discretion.[4]

**2.**  5 U.S.C.A. § 552(b)(5) (West 1977).

**3.**  *Texas v. ICC,* 889 F.2d 59 (5th Cir.1990).

**4.**  *See Halferty v. Pulse Drug Co., Inc.,* 864 F.2d 1185, 1188 (5th Cir.1989); *Blue v. Bureau of Prisons,* 570 F.2d 529, 533 (5th Cir.1978).

**5.**  5 U.S.C.A. § 552(a)(4)(E) (West 1977).

**6.**  *Lovell v. Alderete,* 630 F.2d 428, 431 (5th Cir. 1980).

**7.**  *Chamberlain v. Kurtz,* 589 F.2d 827, 842 (5th Cir.1979) (citing *Blue v. Bureau of Prisons,* 570 F.2d 529 (5th Cir.1978)).  These criteria were

## II

When a plaintiff brings a suit under FOIA, a court "may assess against the United States reasonable attorneys fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed." [5]  Under § 552(a)(4)(E), the trial court has discretion in deciding whether to award attorneys fees.[6]  The analysis requires two steps.  First, the court determines whether the party seeking attorneys fees substantially prevailed.  Second, the following four factors inform the court's discretion in deciding whether to award attorneys fees: (1) the benefit to the public deriving from the case; (2) the commercial benefit to the complainant; (3) the nature of the complainant's interest in the records sought; and (4) whether the government's withholding of the records had a reasonable basis in law.[7]

In denying Texas's motion, the district court first decided that states are not eligible to recover attorneys fees under the Act.  The court argued that the purpose of the section "was to remove the often insurmountable financial barriers the average citizen faced when attempting to force governmental compliance with this Act, not to provide an award to any plaintiff who successfully forced the government to disclose the requested information."  After noting that state governments usually have more money than private litigants do, the court concluded that states are not among the intended beneficiaries of § 552(a)(4)(E).  Therefore, "[g]ranting an award of attor-

included in the original 1974 Senate bill containing proposed amendments to FOIA, but were deleted from the final bill of amendments adopted by Congress.  The Conference Report makes clear, however, that "courts, in exercising their discretion as to awarding such fees, [are] to take into consideration such criteria." S.Conf.Rep. No. 93–1200, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Admin. News 6267, 6285, 6288, *quoted in Blue,* 570 F.2d at 533.  Since our decision in *Blue,* we have applied those criteria in deciding whether to award attorneys fees in FOIA suits.

ney fees in favor of the State of Texas would not serve the purpose of the Act."

In support of this position, the district court cited several decisions that in *dicta* discuss the purposes of the FOIA attorneys-fee provision. The court found especially compelling the language suggesting that one of the reasons Congress enacted § 552(a)(4)(E) was to enable average private citizens to litigate their rights under FOIA.[8] However, neither the cases nor the legislative history on which the cases rely precludes the application of the section to states who are complainants. On the contrary, as Texas notes, the language of the provision itself does not expressly or impliedly exclude states from coverage; rather, the language on its face reaches all complainants. Therefore, Texas argues that unless Congress expressly excluded states from the definition of "complainant" in the section, we should assume that states are included.

In response, ICC argues that, because this court has previously held that some classes of "complainants"—namely, *pro se* plaintiffs—are not eligible for fee-shifting under § 553(a)(4)(E), we must look to legislative history for a delimitation of the class of eligible complainants.[9] ICC then argues that the legislative history of the 1974 amendments to FOIA supports the conclusion that the only complainants eligible for fee shifting are those without adequate resources of their own to litigate FOIA claims—for example, "average private citizens, the indigent, and public interest requesters that lack the wherewithal for litigation...."[10]

The ICC's argument has two flaws. First, our court has not held that the term "complainant" excludes *pro se* litigants from eligibility for fee shifting under § 552(a)(4)(E). Rather, in *Barrett* we interpreted the fee-shifting provision to extend only to "those instances in which the services of an attorney were utilized and fees incurred."[11] We then concluded that lay *pro se* litigants may not be compensated for legal fees they could have incurred, but did not incur. This rationale was seen as furthering a legislative goal of encouraging litigants to seek legal counsel in such cases.[12] We later held that lawyers who represent themselves in FOIA actions may recover under the fee-shifting provision.[13] In distinguishing between lawyer and non-lawyer *pro se* litigants, we explained that Congress sought to encourage legal representation—not necessarily objective legal representation; and we concluded that compensating lawyers for their own legal work was consistent with that purpose.[14] We also noted that calculating the appropriate fee for a lawyer-complainant is comparatively simple because of the ease of determining the lawyer's opportunity costs: "[T]he work foregone is of the same nature as that actually performed. Such is not the case for non-attorney *pro se* litigants."[15]

In sum, if a FOIA plaintiff has actually and reasonably incurred legal fees—that is, a lawyer has handled his case, even if the lawyer is the plaintiff himself—and if the plaintiff substantially prevailed, he may recover reasonable[16] attorneys fees from the federal government, provided that the

**8.** *E.g., Cazalas v. United States Department of Justice,* 709 F.2d 1051, 1057 (5th Cir.1983).

**9.** *Barrett v. Bureau of Customs,* 651 F.2d 1087, 1088 (5th Cir.1981), *cert. denied,* 455 U.S. 950, 102 S.Ct. 1454, 71 L.Ed.2d 665 (1982) (holding that lay *pro se* litigant may not recover attorneys fees under FOIA).

**10.** Appellee's Brief at 11 (citing, *inter alia, Cazalas,* 709 F.2d at 1057 (referring to the legislative history)).

**11.** 651 F.2d at 1089.

**12.** *Id.* at 1089 ("Persons contemplating legal action should be encouraged to consult with attorneys."). *Cf. Cofield v. City of Atlanta,* 648 F.2d

986, 988 (5th Cir.1981) (making same argument in context of Civil Rights Attorney's Fees Awards Act of 1976).

**13.** *Cazalas,* 709 F.2d at 1055–57.

**14.** *Id.* at 1056–57.

**15.** *Id.* at 1057 (citations omitted).

**16.** "There are two separate applications of the reasonable test involved: the amount of the fees must be reasonable and the incurring of the fees must be reasonable." *Barrett,* 651 F.2d at 1089.

court finds that the four discretionary criteria are satisfied. *Any* complainant who meets these conditions is included within the language of the statute. No class of complainants—not even state governments—is excluded.

The second flaw in the ICC's argument is that, even were the statutory language less clear and were we required to turn to legislative history, the legislative history of the 1974 amendments does not evidence purpose to limit the application of the fee-shifting provision to the comparatively poor; rather, Congress intended to effectuate the "national policy [embodied in FOIA] of disclosure of government information." [17] The interpretation urged by the ICC would exclude anyone who, without fee-shifting, would still be able to afford to litigate a FOIA claim. That interpretation would exclude large corporations, wealthy foundations, or even well-heeled individuals who happen to have the resources to maintain a lawsuit. We are persuaded that such an interpretation runs counter to the central purposes of the FOIA fee provision.[18] True, the Senate Report to which all the FOIA fee-shifting cases refer does contain passages indicating that one of the goals of fee-shifting is to empower average citizens to invoke FOIA.[19] But that is not the only goal. On the contrary, the Senate Report makes clear that the principal goal of the provision is to encourage government disclosure of information.[20]

In *Cazalas* we summarized the "raison d'etre" of the fee-shifting provision as follows:

Congress evinced its strong desire, by enacting the FOIA, to establish a national policy of open government through the disclosure of government information. A crucial means of implementing this policy is a liberal attorney fee provision. The fee provision is designed to remove the barriers a private individual faces in insuring government compliance with the policy of open government. Thus, the fee provision serves three clear policies. First, it acts as an incentive for private individuals to pursue vigorously their claims for information. It allows litigants to overcome barriers, most particularly the need for legal fees and legal expertise, that government may erect in an effort to escape compliance with the law. This same incentive is necessary where an attorney seeking information is utilizing his or her own services. Second and third, the provision serves a deterrent and, to a lesser extent, a punitive purpose. Congress recognized the practical effect of the fee provision is that, "if the government had to pay legal fees each time it lost a case, it would be much more careful to oppose only those areas it had a strong chance of winning." The

---

**17.** S.Rep. No. 93–854, 93d Cong., 2d Sess. 17, 18 (1974). We turn to legislative history only to lay the argument to rest. A search for legislative purpose by resort to reports and other paper trails of the process is too often a trip down the yellow brick road. We also note that giving to states the right to counsel fees does not implicate the doctrine of clear statement. *Atascadero State Hospital v. Scanlon,* 473 U.S. 234, 242, 105 S.Ct. 3142, 3147, 87 L.Ed.2d 171 (1985).

**18.** We are aware of no case that limits § 552(a)(4)(A) in the way the ICC suggests. At least one case has expressed disagreement with such a limitation. *Seegull Mfg. Co. v. NLRB,* 741 F.2d 882, 886 (6th Cir.1984) ("While the legislative histories carry clear indications that indigent complainants should be awarded their fees, see S.Rep. No. 93–554, [sic] 93rd Cong. 2d Sess., the Act does not exclude corporations or the wealthy from obtaining fees where such would be otherwise proper.").

**19.** For instance: "Too often the barriers presented by court costs and attorneys' fees are insumountable [sic] for the average person requesting information, allowing the government to escape compliance with the law." S.Rep. No. 93–854, 93d Cong., 2d Sess. 17, 18 (1974). Another example is an often-quoted statement from Senator Thurmond's testimony during the hearings on the bill, a statement that emphasizes this concern:

We must insure that the average citizen can take advantage of the law to the same extent as the giant corporations with large legal staffs. Often the average citizen has foregone the legal remedies supplied by the Act because he has had neither the financial nor legal resources to pursue litigation when his Administrative remedies have been exhausted. (*Hearings,* vol. I at 175).

S.Rep. No. 93–854, 93d Cong., 2d Sess. 17, 18 (1974).

**20.** *Id.*

fee provision is designed to deter the government from opposing justifiable requests for information under the FOIA and to punish the government where such opposition is unreasonable.[21]

Nothing from the Senate Report nor from any other source demonstrates congressional intent to categorically exclude state governments or, more generally, to limit coverage to complainants who cannot afford to litigate their rights under FOIA. Moreover, the goal of encouraging litigation of meritorious FOIA claims is doubtlessly furthered by reimbursing the legal fees of all complainants who substantially prevail and who meet the traditional criteria—even those complainants, such as corporations or states, who could finance their own lawsuit. The principal is obvious: The greater the likelihood that one will be reimbursed for bringing a valid claim, the more willing one will be to bring it. The availability of judicial enforcement will in turn insure that proper disclosures are voluntarily made. We are persuaded that under 5 U.S.C. § 552(a)(4)(E) courts can in appropriate circumstances award attorneys fees to states.

■ We now turn to the district court's alternative holding that, under the four discretionary criteria, Texas is not entitled to attorneys fees in this case.[22] In both the May 14 order, denying Texas's motion for attorneys fees, and the June 15 order, denying Texas's motion for new trial and reconsideration, the district court listed the four criteria applicable under § 552(a)(4)(E) and concluded that Texas had failed to satisfy those factors. Texas argues that the court's decision was an abuse of discretion. We disagree. The district court did

not specify which of the criteria Texas failed to satisfy. But so long as the record supports the court's exercise of discretion, the decision will stand. We are persuaded that the information ordered disclosed in Texas's suit is so devoid of public benefit that the trial court was within its discretion in denying Texas's request for fees.

In the original FOIA suit brought by Texas, the district court held that six of the eleven documents held back by the ICC were not, as the ICC had asserted, exempt from disclosure under the intra-agency memoranda exemption. Therefore, the ICC was forced to disclose those documents. Two of them were letters between ICC's general counsel and Armstrong's counsel regarding possible ICC intervention in Armstrong's suit against Texas. The other four were letters from Armstrong's counsel to the ICC containing drafts of complaints and legal memoranda regarding the litigation between Armstrong and Texas. Texas concedes that these letters disclose no illegality or wrongdoing by the ICC or Armstrong. Nevertheless, Texas contends that their disclosure benefited the public interest because it disclosed the overly-"cozy" relationship between the ICC and Armstrong.

We find Texas's argument unpersuasive. The six documents Texas eventually received were innocuous. Certainly, it is in the public interest "to discover, *if true,* that [a federal agency] is less than entirely just in its dealings."[23] But if the documents sought in an FOIA action fail to evidence any fraud or wrongdoing by the agency, there is little public benefit in their disclosure,[24] at least where as here there

---

21. 709 F.2d at 1057 (citations omitted) (quoting S.Rep. No. 93–854 at 17); *see also La Salle Extension University v. FTC,* 627 F.2d 481, 484 (D.C.Cir.1980) (Congress enacted § 552(a)(4)(E) both to encourage FOIA suits that benefit the public interest and to ensure "compensation for enduring an agency's unreasonable obduracy in refusing to comply with [FOIA's] requirements.").

22. The district court did not address the question whether Texas had substantially prevailed. Neither do we, since we ultimately uphold the court's decision not to award attorneys fees on

the basis of the discretionary criteria from *Blue v. Bureau of Prisons.* In the past, we have typically addressed the prevailing-party question before reaching the *Blue* analysis. *E.g., Lovell v. Alderete,* 630 F.2d 428, 431–32 (5th Cir.1980). However, we have never held that the issues must be addressed in that order.

23. *Cazalas,* 709 F.2d at 1053 (emphasis added).

24. *See Guam Contractors Ass'n v. United States Dept. of Labor,* 570 F.Supp. 163, 168–69 (N.D. Cal.1983); *New England Apple Council, Inc. v. Donovan,* 640 F.Supp. 16, 17 (D.Mass.1985).

was no independently generated cloud of suspicion to be dissipated.

In *Blue v. Bureau of Prisons* we discussed the nature of the public-benefit requirement of § 552(a)(4)(E):

> [I]n weighing this factor a court should take into account the degree of dissemination and likely public impact that might be expected from a particular disclosure. This goes to the central purpose of the disclosure act: to assist our citizenry in making the informed choices so vital to "the maintenance of a popular form of government." Thus the factor of "public benefit" does not particularly favor attorneys' fees where the award would merely subsidize a matter of private concern; this factor rather speaks for an award where the complainant's victory is likely to add to the fund of information that citizens may use in making vital political choices.[25]

We fail to see how the documents procured by Texas will contribute to the public "fund of information."[26] To the contrary, we find the documents devoid of public interest. In fact, after reading the facts of this case, we are left with the strong impression that Texas filed its FOIA suit in the hope of finding evidence of some impropriety or illegality and found no impropriety or illegality whatsoever. In other words, Texas went fishing for bass and landed an old shoe. Under the circumstances, we decline to require the federal government to pay the cost of tackle.

■ Since the disclosed documents provide no benefit to the public, and since none of the other discretionary criteria supports the award of attorneys fees, we hold that the district court acted within its discretion in denying Texas's motion. We also hold that 5 U.S.C. § 552(a)(4)(E) does not entitle Texas to receive attorneys fees and costs from Armstrong. The statute by its terms allows courts to assess fees only against the United States, and Texas offers no

plausible reason for interpreting Congress's intent to be otherwise.

The district court's judgment is AFFIRMED.

---

25. *Blue,* 570 F.2d at 533–34 (citations omitted) (quoting S.Rep. No. 854); *see also Lovell,* 630 F.2d at 433; and *Nationwide Bldg. Maintenance Inc. v. Sampson,* 559 F.2d 704 at 712 (D.C.Cir. 1977).

26. Indeed, Texas admits that it does not plan to disseminate the documents to the public in any fashion. The information, Texas says, will become a part of the state's fund of information used by state employees in dealing with the ICC.