**Robert D. FORD, Plaintiff,**

v.

**SELECTIVE SERVICE SYSTEM, U. S. CIVIL SERVICE COMMISSION, Defendants.**

**Civ. No. 75–952S.**

United States District Court, M. D. Pennsylvania.

Nov. 8, 1977.

As Corrected Dec. 28, 1977.

Charles A. Glackin, Philadelphia, Pa., for plaintiff.

Paul J. Killion, Asst. U. S. Atty., Harrisburg, Pa., for defendants.

## OPINION

MUIR, District Judge.

Ford filed this complaint pro se pursuant to the Freedom of Information Act, 5 U.S.C. § 552, in an attempt to obtain from the Selective Service System and the U. S. Civil Service Commission documents which he contends relate to his failure to be reappointed as Selective Service Director of the Commonwealth of Pennsylvania. On November 15, 1975, the Government answered Ford's complaint. On December 16, 1975, a hearing was held before the late Chief Judge Michael H. Sheridan to whom this case was originally assigned. On January 19, 1976, the United States released several

documents to Ford. On February 2, 1976, the United States filed a motion for summary judgment. Hearings on that motion were held before Judge Sheridan on March 3, 1976 and April 9, 1976. On April 9, 1976, Charles A. Glackin, Esq. entered his appearance on behalf of Ford. On October 1, 1976, because of the death of Judge Sheridan, this case was reassigned to the undersigned judge. On December 7, 1976 the Court entered an Order directing Ford to state what records had been withheld from him and what deletions had been made. On March 14, 1977, the Court rescinded its Order of December 7, 1976 and directed the Government to submit to Ford copies of all documents in its files relating to him deleting therefrom only matters as to which the Government determined he was not entitled, to justify all deletions, and to give Ford a list of all documents in Ford's Civil Service and Selective Service files. On May 11, 1977, the Government complied with this Court's Order of March 14, 1977. On June 1, 1977, at the final pre-trial conference and one day before jury drawings for cases on the June list, this case was dismissed by stipulation of the parties. The only issue remaining is Plaintiff's motion for attorney's fees and costs pursuant to 5 U.S.C.A. § 552(a)(4)(E) which was filed with the Court on August 1, 1977 with a supporting brief. On August 22, 1977, the Defendants filed a responsive brief. The last date for the filing of a reply brief with the Court was August 29, 1977.

■ 5 U.S.C.A. § 552(a)(4)(E) states that

> "(E) The court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed."

The Government contends that Ford has not substantially prevailed in this case. According to the Government, the documents sought by Ford were exempted from disclosure by 5 U.S.C. § 552(b)(5) and (6) of the Freedom of Information Act. The Government maintains that it gave Ford documents on January 19, 1976 because it concluded that he was entitled to these documents pursuant to the Privacy Act, 5 U.S.C.A. § 552a which became effective September 27, 1975. The Government argues in its brief that it gave no documents to Ford after January 19, 1976. Ford contends in his brief that he received 50 documents from the Government on May 11, 1977. To prevail substantially, in order to obtain attorney's fees and costs pursuant to the Freedom of Information Act, it is not necessary that a Plaintiff actually obtain a judgment in his favor. The recovery of attorney's fees and costs should not be foreclosed whenever the Government chooses to resolve · an action under the Freedom of Information Act by supplying during the litigation the materials sought in the complaint. The purpose of the 1974 amendment to the Freedom of Information Act providing for the award of attorney's fees and costs was the finding of Congress that few individuals could afford the expense of bringing a suit under the Freedom of Information Act even though an agency's decision to withhold information might be clearly unlawful. *See* S.Rep.No.93–854, 93rd Congress, 2d S.Sess. May 16, 1974, in joint committee print, at p. 169; H.R.Rep. No.92–1419, 92nd Cong. 2d Sess. September 20, 1972 in joint committee (at page 86).

■ To refuse to award attorney's fees when the documents sought are provided by the Government may encourage litigants to proceed to a final judgment to obtain attorneys' fees. The Court is of the view that attorney's fees should not be denied merely because the Government submits the documents sought to the Plaintiff. *Kaye v. Burns*, 411 F.Supp. 897 (S.D.N.Y.1976); *American Federation of Government Employees v. Rosen*, 418 F.Supp. 205 (N.D.Ill. 1976); *Goldstein v. Levi*, 415 F.Supp. 303 (D.C.1976); *Consumers Union of United States, Inc. et al. v. Board of Governors of the Federal Reserve System*, 410 F.Supp. 63 (D.C.1975). In order for the Plaintiff to recover attorney's fees pursuant to 5 U.S. C.A. § 552(a)(4)(E) he must show at a minimum that the prosecution of the action could reasonably have been regarded as

necessary and that the bringing of the action had a substantial causative effect on the delivery of the information. The Court is of the view that Ford has met this burden. *Vermont Low Income Advocacy Counsel, Inc. v. Usery,* 546 F.2d 509, 513 (2d Cir. 1976). Ford attempted to obtain the documents he sought from the Selective Service System and the Civil Service Commission through administrative action and failed. If the Government gave Ford the documents on January 19, 1976, because of the Privacy Act, it is difficult to understand why the Government would wait four months after the effective date of that Act to take this action. Because the filing of the complaint provided the impetus for the delivery of the documents, Ford has substantially prevailed.

■ The fact that Ford substantially prevailed in this action does not automatically entitle him to attorney's fees. The Senate version of the attorney's fees provision specified the following four criteria to be considered by the Court in exercising its discretion to award attorney's fees: (1) the benefit to the public, if any, deriving from the case, (2) the commercial benefits to the complainant, (3) the nature of the complainant's interests in the records sought and (4) whether the Government's withholding of the records sought had a reasonable basis in the law. S.Rep.No.93–854, Leg.Hist. 171. Although these criteria were not incorporated into the original bill, the legislative history of the act indicates that the reason for this was that Congress concluded that the existing body of law concerning the award of attorney's fees recognized these factors and a statement of the criteria incorporated into the statute might be too limiting. See Committee of Conference H.R.Rep.No.93–1380, 93rd Cong. 2d Sess., September 25, 1974, in Joint Committee at p. 227.

On the basis of the first, second and third criteria above, the Court concludes that Ford should not receive attorney's fees. Although Ford did not seek these documents for commercial gain, he certainly did not do so in the interests of the public. The purpose which he sets forth in his brief in support of his motion for attorney's fees was to secure information concerning the investigation of the Plaintiff for reappointment as Selective Service Director for the Commonwealth of Pennsylvania which he contends violated federal regulations and due process and to compel compliance with various federal regulations. This investigation uncovered certain alleged improprieties on the part of Ford. Ford contends that there was a deliberate attempt to smear him because of his Congressional candidacy. Ford's interests could have been vindicated by a private lawsuit for damages. The award of attorney's fees is not necessary to encourage the bringing of this kind of action. It could be brought by an aggrieved Plaintiff whether or not attorney's fees were awarded. Ford used this action to discover if there was any basis for a lawsuit against the Selective Service Commission and the Civil Service Commission and their employees. No reason exists why the taxpaying public should bear the cost of Ford's preparation for a private lawsuit by paying his attorney's fees. Consequently, this case is similar to a claim brought pursuant to the Freedom of Information Act for the commercial benefit of a party. In discussing that criterion, the senate report noted that there will seldom be an award of attorney's fees where the suit is to advance the private commercial interests of the complainant. In that type of case there is usually no need to award attorney's fees to insure that the action will be brought. The private self-interest motive of pecuniary benefit to the complainant should be sufficient to insure the vindication of the rights given in the FOIA. S.Rep.No.93–854, 93rd Cong. 2d Sess., May 16, 1974, in Joint Committee Print, at p. 171. The senate report states that attorney's fees should not usually be awarded in this situation unless the Government officials have been recalcitrant in their opposition to a valid claim or have otherwise engaged in obdurate behavior. The Court is in no position to determine whether Ford's substantive claim is valid. To do so would in essence require that this case be determined on the merits on an

application for attorney's fees. Such a result could not possibly be desired by Congress when a case has been settled.

The documents submitted by Ford in support of his motion for attorney's fees and costs do not show obdurate or recalcitrant behavior on the part of the Government. Although the memorandum of Peter Straub, then general counsel to the Director of Selective Service, dated June 20, 1975, indicates that he had a desire to hurt Ford, it does not show that the withholding of the information Ford sought was solely because of any impermissible motive. The troubling part of the letter states "In summary, I perceive an erosion of position in Pennsylvania and hope to pursue all advantages forcefully and quickly. I am attempting to rub salt in the wounds." But before that the letter states "Thus my letter to the attorney, copy attached, does several things. It serves notice we mean business and that we grow restless with more delays and makes clear much legal time and talent will be necessary to accomplish anything and that no accomplishments are much within the realm of possibility." This indicates that Straub felt that he had a reasonably strong legal position.

Ford also contends that the Government's denial that a Standard Form 73 had been prepared when it in fact existed shows obdurate conduct on the part of the Government. Ford has not established that the Government deliberately misled him as to the non-existence of Standard Form 73. Government agencies too often are unaware of the documents that they possess to lead to the conclusion that such an oversight by itself indicates obdurate conduct. Ford maintains that the Selective Service Commission failed to provide him with a document entitled "Factors affecting the appointment of Mr. Ford" which he requested by a letter dated April 14, 1975. The Selective Service Commission based its refusal on its view that the memorandum was exempt from disclosure under the Freedom of Information Act. Yet Governor Shapp who recommended the appointment of Ford as Selective Service Director for Pennsylvania received a copy of the report. Information from the report also appeared in various newspapers. Ford has not shown the Government leaked the report. Divulging the contents of the report to Governor Shapp is justifiable because he was the appointing officer.

Ford also contends that the fact that certain memoranda in his file were undated raises serious questions of misrepresentation to the Governor of Pennsylvania. This may be true. But the undated memoranda do not establish obdurate behavior on the part of the Government in failing to release them to Ford.

Ford maintains that a certain statement made by Reverend Watson Edward Grove, that someone had a paper he signed notarized out of his presence, should have been revealed to Ford when he made his request pursuant to the Freedom of Information Act. Ford eventually received the information as a result of this lawsuit. The Court is not determining whether or not the refusal to divulge this information was proper under the Freedom of Information Act, but whether it was obdurate or recalcitrant. This data is contained in a paragraph which was deleted from the copy of Grove's statement initially given to Ford because it contained Grove's name and Colonel Rock's name. There is nothing to indicate that the Government deliberately withheld the fact that a document was notarized outside of the presence of the individual who signed it.

Ford contends that a letter given to him by the Government after the commencement of this action omitted the letter "N" intentionally to conceal that the letter had come from Representative Shuster's office solely for the purpose of destroying Ford's candidacy against him. Ford has not proven that the Government deliberately deleted the letter "N".

In the light of the foregoing, Ford's motion for attorney's fees and costs is denied.

An appropriate order will be entered.