**GUAM CONTRACTORS ASSOCIATION, a non-profit association, Plaintiff,**

**v.**

**UNITED STATES DEPARTMENT OF LABOR, et al., Defendants.**

**No. C–79–3464 SW.**

United States District Court, N.D. California.

April 15, 1983.

Joseph P. Russoniello, U.S. Atty., John F. Barg, Chief, Civ. Div., George Christopher Stoll, Asst. U.S. Attys., San Francisco, Cal., for defendants.

Torkildson, Katz, Jossem & Loden, Jared H. Jossem, Colleen C. Sakai, Honolulu, Hawaii, Severson, Werson, Berke & Melchior, J. Mark Montobbio, William W. Wertz, John H. Feldmann III, San Francisco, Cal., for plaintiff Guam Contractors Ass'n, a nonprofit association.

### ORDER AND MEMORANDUM
### OF DECISION

SPENCER WILLIAMS, District Judge.

This is an action under the Freedom of Information Act, 5 U.S.C. § 552, ("FOIA"), to recover attorney fees and costs incurred in a document request from the U.S. Department of Labor, ("DOL"), by Guam Contractors Association, Inc., ("GCA"). GCA is a non-profit association representing contractors engaged principally in heavy building construction within the territory of Guam. GCA requested, by letter dated September 14, 1979, certain DOL documents relating to the institution of a system of wage guidelines for its members' employees, called the "Adverse Effect Wage Rate Guidelines", ("Guidelines"). These Guidelines were intended to address a perceived problem on Guam of an influx of cheaper, non-Guamanian labor supplanting local labor, generally depressing the wages paid

and the economy of Guam. *See Exhibit E to Plaintiff's Complaint.*

The FOIA request for documents was granted in part and denied in part by a disclosure officer in DOL, Employment and Training Administration, San Francisco, California, by letter dated November 1, 1979. *See Exhibit H to Plaintiff's Complaint.* In this response, GCA was apprised of its right to appeal the officer's decision to a higher level of the Department. It did not choose to exercise this right; instead, GCA filed this action on November 27, 1979, seventeen days later. Upon being served with GCA's complaint, DOL processed the request within the complaint as if it were on appeal, reviewing the initial denial. Upon concluding its review, DOL released an additional 900 + documents to the GCA, and filed an affidavit with this Court, explaining the few remaining deletions from the release, setting forth the exemptions relied upon and appending these withheld documents for *in camera* inspection by the Court.

*Statutory Analysis:*

The FOIA grants this Court discretionary authority to award reasonable attorney's fees in connection with a private party's request for information from the federal government. 5 U.S.C. § 552(a)(4)(E) provides:

> The court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed.

There are three steps to determine whether, and to what extent if any, GCA should recover reasonable costs of the FOIA litigation. First, this Court must determine if GCA has "substantially prevailed"; second, since § 552 empowers this Court to award fees in its discretion, some examination of the factors relevant to assessing the propriety of such an award, in light of the theoretical justifications for § 552(a)(4)(E), is appropriate. Finally, if this Court deems

some amount properly recoverable, it must then evaluate GCA's submitted itemization by the standards established in *Johnson v. Georgia Highway Express,* 488 F.2d 714, 717–19 (5th Cir.1974) and *Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67, 69 (9th Cir.1975), *cert. denied sub. nom Perkins v. Screen Extra Guild, Inc.,* 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976), to arrive at the "lodestar" sum to be reimbursed. *Manhart v. City of Los Angeles,* 652 F.2d 904, 907 (9th Cir.1981).

It is the opinion of this Court that plaintiff substantially prevailed, but that public policy expressed in the FOIA mandates a denial of the motion to shift GCA's fees claimed here to the United States. Accordingly, it is unnecessary for us to calculate the "lodestar" amount. A brief exposition of the Court's reasoning follows, *infra.*

■ By its terms, § 552(a)(4)(E) permits the district court to award reasonable attorney fees only to a party which has "substantially prevailed" in obtaining the release of requested information upon resort to litigation after frustration of administrative channels. *Cuneo v. Rumsfeld,* 553 F.2d 1360, 1364 (D.C.Cir.1977). A favorable final judgment is not an absolute prerequisite to an award of fees. *Vermont Low Income Advocacy Council v. Usery,* 546 F.2d 509, 513 (2d Cir.1976), (*"VLIAC"*); *accord, American Fed. of Government Employees AFL–CIO v. Rosen,* 418 F.Supp. 205 (N.D. Ill.1976). Where, as here, the release of previously withheld documents by the United States occurs after a private party files suit, the Court may infer, absent evidence to the contrary[1], that the instigation of litigation had a "causative" effect on the release. *Cuneo* at 1365. *Compare Goldstein v. Levi,* 415 F.Supp. 303 (D.D.C.1976), where, after three years of unsuccessful attempts to obtain certain government materials relating to the Rosenberg espionage prosecution, a PBS producer received the information within weeks of filing suit.

---

1. Here, there is ample evidence in the record from which this Court could conclude either way: *viz.,* that the instigation of this lawsuit was premature and not necessary when filed, or that, since disclosure followed vigorous maintenance of the suit, it *was* necessary.

■ Yet more proximity or sequence of instigating suit to document production does not automatically entitle the "prevailing party" to an award of fees. *VLIAC* at 513. In order to recover its fees in an FOIA case, "the *plaintiff* must show *at a minimum* that the *prosecution of the action* could have been regarded as *necessary* and that the action had *substantial causative effect* on the delivery of the information." *Id., emphasis added. See Church of Scientology v. U.S. Postal Service,* 700 F.2d 486, 491–92 (9th Cir.1983).

■ In *VLIAC*, the district court denied the plaintiffs' fee claim for documents obtained in connection with a labor recruitment case. The Second Circuit, while disagreeing with some of the trial court's reasoning, upheld the denial on its view, *inter alia*, that plaintiffs' hasty recourse to litigation without permitting the government some "grace" period in which to consider and satisfy its request, prevented a conclusion either that the litigation was "necessary", or that it had a "substantial causative effect" in obtaining the information sought. *Id.* at 514–15.

Similarly, in a recent decision of the Ninth Circuit, these considerations of "necessity" and "causation" were greatly invigorated. In *Church of Scientology v. U.S. Postal Service, supra,* the Circuit reversed the trial court's denial of attorney's fees under § 552(a)(4)(E), charging the lower court to resolve "the factual issues raised by the parties to determine whether the Church substantially prevailed on its claim." *Id.* at 490. The Circuit, upon its review of the record, found the lower court's resolution of the matter of fees inadequate in its failure to consider the components of the "substantially prevailing" test: "reasonably necessary" suit and "causal nexus" to production. *Id.* at 489.

We interpret the Circuit's discussion in *Church of Scientology* to charge trial courts with the duty to specifically consider the circumstances and events surrounding the document request and subsequent production, if any, in determining whether the fee petitioner has "substantially prevailed".

*Id.* at 492. Although, for reasons discussed *infra,* conflicting inferences may be drawn from the relevant facts, our consideration presumes the petitioner is "eligible" for fees as a "substantially prevailing" party. *Id.* at 492–93.

From the facts of this case, it can be said that the GCA's haste in filing suit after an initial denial at the lowest level of the DOL obscures conclusions as to both the "necessity" and "causal nexus" of the litigation in securing the documents. While this haste has cast some doubt upon these factors, GCA's almost immediate amendment of the action to seek equitable relief against revision of the Guidelines enhances this Court's skepticism of GCA's claims of urgency for pursuing the few remaining documents. By consideration of these subleties, we satisfy the level of scrutiny required by *Church of Scientology, id.* at 492; however, our reading of the Circuit's illumination of § 552(a)(4)(E) still permits trial courts to assume, *arguendo vel non,* that GCA has shown both "necessity" and "nexus", if it is clear that, regardless of its "eligibility" for fees, we would decline, in our discretion, to make an award. *Id.* at 493, 495–96.

Were this Court to allow attorney's fees, it would be necessary to scrutinize GCA's submitted costs to identify what amount went solely to the early efforts to dislodge the documents, and disallow all other amounts. A cursory review of the application indicates that a substantial portion of GCA's application would be disallowed on this basis; however, our resolution of GCA's petition *in toto* based upon an analysis of the public policy considerations behind the FOIA applied to the case at bar, makes such review unnecessary.

Notwithstanding these observations and qualifications, the Court will assume that GCA, by its recourse to litigation, "substantially prevailed" when it obtained the release of certain withheld documents after instigation of suit. We now turn to the second of the three inquiries: whether the facts and circumstances of the case at bar warrant the exercise of this Court's discretion to award reasonable fees.

*Evaluation of the case at bar:*

■ Even though it has "substantially prevailed", GCA is not, *ipso facto,* automatically entitled to recoup its claimed fees and costs. By enacting § 552(a)(4)(E), Congress did not extend a

> roving authority to the Judiciary to allow counsel fees as costs or otherwise whenever the courts might deem them warranted. What Congress has done, . . . while fully recognizing and accepting the (American Rule [2]), is to make specific and explicit provisions for the allowance of attorney fees under selected statutes granting or protecting various federal rights.

*Alyeska Pipeline Service Co. v. Wilderness Society, et al.,* 421 U.S. 240, 260, 95 S.Ct. 1612, 1623, 44 L.Ed.2d 141 (1975). The Supreme Court further instructs that, even in granting recovery of fees in connection with certain litigation, Congress determines the "circumstances . . . and range of discretion of the courts in making those awards." *Id.* at 262, 95 S.Ct. at 1624.

Congress has not failed to instruct the judiciary's interpretation of § 552(a)(4)(E). In drafting the statute, congressional committees proposed four criteria to be considered, along with existing equitable principles, when a court was asked to take exception to the American Rule [3] by application of § 552(a)(4)(E). *See, e.g.,* H.Rep. 876, 93d Cong., 2d Sess. 9 (1974); Sen. Com. on the Jud., *Amending . . . ,* S.Rep. No. 854, 93d Cong., 2d Sess. 41 (1974), U.S.Code Cong. & Admin.News 1974, p. 6267.

Having once found that a party has "substantially prevailed" in an FOIA request, the award, if any, of attorney fees is left to the "sound discretion of the district judge", *Chamberlain v. Kurtz,* 589 F.2d 827, 842

(5th Cir.1979), and is "not automatic". *Long v. U.S. I.R.S.,* 596 F.2d 362, 369 (9th Cir.1979). Our discretion to consider these four specific factors highlighted by Congress, as well as any relevant equivalent exceptions to the American Rule, must identify whether awarding fees under § 552(a)(4)(E) in the case at bar furthers the overriding policy of the FOIA. *Long* at 369; *Blue v. Bureau of Prisons,* 570 F.2d 529, 533 (5th Cir.1979).

■ These four criteria are: (1) benefit to the public, if any, from the release of the documents; (2) commercial benefit to the complainant; (3) the nature of the complainant's interest in the records sought; and, (4) whether the government's withholding of the records had a reasonable basis in law. S.Conf.Rep. No. 93–1200, 93d Cong., 2d Sess., 17, 19 (1974), reprinted in 1974 U.S.Code Cong. & Admin.News, pps. 6285, 6288. Although the version of § 552(a)(4)(E) to ultimately emerge from conference did not retain these four criteria explicitly, the Conference report makes clear that the deletion from the final draft was neither intended to make awards automatic, nor to withdraw these considerations from the courts' review, but was simply to avert a "delimiting and therefore unnecessary" statement of the existing law. *Cuneo* at 1364, citing *American Fed. of Government Employees AFL–CIO,* at 207–08.

The background and policy considerations behind the FOIA which mandate our decision here merit brief mention. As a leading case from the District of Columbia Circuit explained:

> In enacting section 552(a)(4)(E) Congress sought to lower the barriers facing the average person requesting information.

---

**2.** *Id.*

**3.** The Supreme Court's discussion of the "American Rule" in a recent case is illuminating on the structure that a court should adopt in reviewing fees petitions. The Court suggests that under the "American", as contrasted with the "English", rule, the prevailing party may *not* recover the cost of litigation from his opponent, except under one of three conditions: (1) the court is *required* by statute to award fees to

the prevailing party; (2) the court decides, in its discretion afforded by statute, to award fees; or, (3) the court, in light of its view of the equities, justifies a fee award by a common law exception, including: (a) common benefit; (b) private attorney general; or, (c) opposition conducted in bad-faith or vexatiously. *See Alyeska Pipeline Service Co. v. Wilderness Society et al.,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975).

Furthermore, successful FOIA litigants enhance the public interest by bringing the government into compliance with the law. As agents of the national policy of public disclosure it is equitable that they be awarded for their service.

. . . . .

Section 552(a)(4)(E) was not intended to compensate FOIA complainants who have a private commercial interest in disclosure which is sufficient incentive to pursue their claim through the courts.

. . . . .

If the potential for private commercial benefit was sufficient incentive to encourage Cuneo to pursue his FOIA claim, the policy objectives of section 552(a)(4)(E) would be met and it would not be improper for the trial court to deny his request for attorney's fees.

*Cuneo* at 1366–68. It is with these initial observations that we evaluate GCA's request for fees.

### (1) Benefit to the Public from the disclosure:

 It is important to distinguish GCA's prosecution of the FOIA request from its subsequent constitutional challenge to the Guidelines.[4] Only those efforts dedicated to disclose information contained in illegally withheld documents are properly addressed in a § 552(a)(4)(E) request; despite any practical nexus between a FOIA suit and a later successful challenge to the merits of government action exposed by that FOIA disclosure, it must be the disclosure *qua* disclosure to confer the public benefit. *See MCA, Inc. v. IRS,* 434 F.Supp. 212 (C.D.Cal.1977); *also see, Saunders v. Claytor,* 629 F.2d 596, 599 (9th Cir.1980).

Merely incidental or inevitable public benefits of disclosure from an FOIA suit, such as achieving technical government compliance with the letter of the law, or adding additional information to the stock from which the public may draw for its "vital political choices", while highly relevant to the court's decision as to the propriety of the United States' withholding of sought-after materials under § 552(a) and (b), will not automatically satisfy this intentionally more rigorous requirement in § 552(a)(4)(E). *Cuneo* at 1366. Trial courts must carefully scrutinize the nature and degree of public benefit which resulted from disclosure *qua* disclosure. *Alirez v. NLRB,* 676 F.2d 423, 427 (10th Cir.1982); *cf., Indian Law Resource Center, et al., v. United States Department of the Interior,* 477 F.Supp. 144, 147 (D.D.C.1979).

The Fifth Circuit, in *Blue v. Bureau of Prisons,* acknowledged that § 552(a)(4)(E) requires that courts consider the degree of dissemination to the press and public interest organizations in assessing both the significance of the information, as well as the effect of its disclosure. *Id.* at 534–35. Although we have previously admitted the difficulty of ascertaining the effect of GCA's efforts in the FOIA, as opposed to the subsequent constitutional challenge to the Guidelines, in influencing the United States to eventually withdraw the Guidelines, this uncertainty does not detract from the appropriateness of our disposition of GCA's request of fees here. Even if we were to credit the litigation for disclosure as (1) primarily instigated to achieve the Guidelines' revocation, and in the public interest; and, (2) in hindsight, the precipitant factor in DOL's withdrawal of the Guidelines, GCA would, at most, be entitled to but a portion of its fees, since the effect of its efforts also conferred a *sizeable*[5] pri-

---

4. A motion for a preliminary injunction by GCA followed quick on the heels of its initial FOIA suit. Ultimately, this Court did enter a permanent injunction, enjoining the DOL and the Government from enforcing the Guidelines on September 13, 1982; this permanent injunction was vacated November 19, 1982, when the Executive Branch of the Government withdrew the Guidelines.

5. Even if this Court were to accept the underlying premise of GCA's argument for fees; i.e., "what was good for our members was good for the Guamanian economy; what was good for the economy was good for the people of Guam"; the mere conveyance of such an inevitable "trickle down" benefit can hardly support recovery of the legacy of legal fees sought here.

vate benefit to GCA's members. *See MCA* at 213.

After grappling with this fact that the FOIA action may have had both public and private benefits, it seems most appropriate to balance the amount of public benefit from disclosure with the nature and quantum of the private interests served by the disclosure. We balance with the Statute's ultimate purpose in mind: to encourage the government to comply with the law requiring disclosure of properly public information to aid exercise of political rights. *Cuneo* at 1363–64; *Blue* at 533–34; *Aviation Data Service v. Federal Aviation Administration, et al.,* 687 F.2d 1319 (10th Cir. 1982).

(2) and (3) Commercial benefit to complainant and nature of a complainant's interest in records sought:

Examining the nature of GCA's interest in disclosure first, we make two observations which counsel denial of an award of attorney's fees. First, as GCA conceded, "(t)his case was initially brought to obtain commercially valuable data by the members of the Plaintiff association to enable them to bid." *Plaintiff's revised proposed Findings of Fact & Conclusions of Law,* ¶ 20, filed October 17, 1980. At best, GCA concedes its members' private commercial interests prompted the FOIA suit. This negates a crucial justification for awarding fees in such suits; fees are appropriate incentives to overcome a private litigant's initial reluctance to bring meritorious and necessary FOIA suits in the public interest. *See* S.Rep. No. 93–854, 93d Cong., 2d Sess., May 16, 1974, in *Joint Committee Print* at 171.

Second, GCA's FOIA suit served two ulterior purposes in the litigation as a whole, greatly overshadowing its disclosure to the public more information about the Guidelines. Although this Court can make no claims of privity to GCA's motives in styling the litigation as it did, it is clear that GCA used the FOIA suit as a "head-start" for discovery in its constitutional challenge to the Guidelines, as well as a basis for jurisdiction in this Court over the Guidelines in Guam. In light of the usefulness of the FOIA suit for these private purposes, an award of fees would be improper. *Compare MCA v. IRS,* 434 F.Supp. 212 (C.D.Cal.1977); *Ford v. Selective Service System,* 439 F.Supp. 1262 (M.D.1977); *Chamberlain v. Kurtz,* 589 F.2d 827 (5th Cir.1979); *Luzaich v. U.S.,* 435 F.Supp. 31, 37 (D.Minn.1977).

Turning next to consideration of the extent to which the FOIA suit commercially benefited GCA's members, it is clear to this Court that filing a FOIA suit was but a clever first step in GCA's entirely commercially prompted challenge to the DOL's attempt to tinker with Guam's prevailing wage rates paid to its members' employees by the Guidelines. In view of the savings a successful resolution of the litigation promised its members—over $90,000/month, from threatened increases in the Guidelines (Plaintiff's Motion for Preliminary Injunction, p. 1, n. 1)—there can be little doubt that GCA, although nominally a non-profit organization, was the tool and surrogate litigant for various commercial entities. As such GCA's "private self-interest motive . . . (was) sufficient to insure the vindication of rights given in the FOIA." *Blue* at 534. *Cf., Pope v. U.S.,* 424 F.Supp. 962 (S.D.Tex.1977). Notwithstanding any incidental public benefit which resulted from either the FOIA suit, or the subsequent litigation it spawned, the fact and quantum of the commercial benefit conferred by the action upon GCA's members preclude the award of fees.

(4) Government's refusal to release the withheld documents:

Remaining to be considered is the reasonableness of the Government's response to GCA's FOIA request. In evaluating the reasonableness of the Government's positions, we must review its conduct from GCA's initial demand upon DOL[6] until its submission of the few remaining withheld documents for this Court's *in camera* in-

---

**6.** September 14, 1979.

spection[7], but does not require delving into the merits of the request or refusal beyond examining the spirit in which the Government addressed the request. *Ford* at 1265–66.

The award of fees in an FOIA suit on this ground is "essentially a punitive measure against the government if it unreasonably refused to release its information." *Grooms v. Snyder*, 474 F.Supp. 380, 383 (N.D.Ind.1979), explaining *Jones v. U.S. Secret Service*, 81 F.R.D. 700 (D.D.C.1979). More than accepting GCA's allegations of the Government's bad faith, or the Government's perfunctory citation to various grounds for exemption from FOIA under § 552(b); this Court, with its intimate awareness of the circumstances of this litigation must assess the Government's action *in toto.* If we were to conclude that "non-disclosure was designed to avoid embarrassment or thwart the requester", we would be justified, if consistent with our conclusions as to the other criteria for such an award, in making some fee award to GCA. *Blue* at 534.

Reviewing the course of this litigation, this Court finds little, if any, evidence of the Government's "recalcitrance or obdurance." *Ford* at 1265–66. Although GCA's subsequent requests for withheld documents was met with some "foot-dragging" and lack of cooperation by the Government, any conclusions as to whether this behaviour constituted sufficiently dilatory conduct to independently justify an award of fees must be tempered by the haste and relative voracity with which GCA undertook full-scale, and perhaps unnecessary, litigation. In view of the alacrity with which the Government provided GCA with most of the remaining materials, and submitted the balance for this Court's inspection, it is entirely reasonable for us to accept the Government's explanation that it merely reconsidered its initial partial denial as if upon administrative appeal by GCA's filing of the FOIA suit. None of the documents earmarked as "exempted" from the FOIA, and thus properly withheld by DOL, was

ordered released as a result of our *in camera* review. Beyond GCA's allegations, which simply track the language of this fourth criteria, GCA supplies no factual basis in the record to justify our finding that the Government acted in bad faith, and we see no cause to do so.

We have also considered the common-law equitable grounds which could justify an award of fees, including: (1) conferral by its efforts of a "common benefit"; (2) "private attorney general"; or, (3) bad faith or "vexatious" opposition. To the extent that any of these expand the scope of relevant considerations of the factors discussed above, we see no reason to alter our conclusion that an award of attorney's fees to GCA for this FOIA suit is inappropriate. *See, Church of Scientology* at 493.

IT IS THEREFORE ORDERED THAT plaintiff's motion for an award of attorney's fees is hereby DENIED.